## BOETTGER v. SCHERPE & KOKEN ARCHITECTURAL IRON COMPANY, *Appellant.*

### Division One, July 9, 1894.

1. **Negligence**: MASTER AND SERVANT: DEFECTIVE SCAFFOLD. In an action by the widow for the death of her husband caused by defects in a scaffold on which he was working, defendant pleaded contributory negligence, and, also, that deceased himself had selected the lumber and built the scaffold in the course of his duty under his employment; plaintiff replied with a general denial. *Held*, that the pleadings sufficiently raised the issue of the competency of the deceased to do the work assigned.

2. ———: ———: ———. The deceased was only required to exercise the best judgment of a common laborer, such as he was, in making selection of the material.

3. ———: ———: ———: INSTRUCTION. An instruction that, unless such selection was in the usual course of his employment, deceased was not required to examine the lumber, but might presume that it was sufficient, was erroneous.

4. ———: ———: ———: EXPERT TESTIMONY. Expert testimony as to the effect of a knot or cross-grain upon the strength of timber used in the scaffold was admissible.

5. **Supreme Court Practice**: MEASURE OF DAMAGES: INSTRUCTION: HARMLESS ERROR. A judgment for plaintiff in an action for personal injuries will not be reversed because of the generality of the instruction on the measure of damages, where it is evident from the amount of the verdict the defendant was not prejudiced.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Pollard & Werner* for appellant.

(1) There is no evidence to support the verdict. This court will look into the record to ascertain this, and, if it so find, will reverse the judgment. *Schooling v. Railroad,* 75 Mo. 518; *Hacker v. Brown,* 81 Mo. 68. (2) It was error of the trial court to permit expert tes-

timony to be introduced to show that the effect of a knot in a piece of lumber was to weaken it. Rogers on Expert Testimony, sec. 6, p. 19; *Gutridge v. Railroad*, 94 Mo. 468; *Bohn v. Railroad*, 106 Mo. 429; *Flynn v. Bridge Co.*, 42 Mo. App. 529; *Underwood v. Waldron*, 33 Mich. 232; *Baldwin v. Railroad*, 68 Iowa, 37; *White v. Ballou*, 8 Allen, 408; *Ferguson v. Hubbell*, 97 N. Y. 507. (3) The instructions of the court submitting the questions as to whether the work upon which deceased was engaged, and as to his competency to perform the work, were erroneous as authorizing a recovery on a case not made by the pleadings. It is error to submit to a jury an issue of fact concerning which no allegation is made in the pleading. *Melvin v. Railroad*, 89 Mo. 106. (4) Defendant was entitled to the explicit instructions asked, that the question of the competency of the deceased to perform the duty of selecting the lumber for the construction of the scaffold in question, was not one of the issues in the case. (5) Defendant was entitled to a correct instruction upon the question of the capacity of the deceased, so long as the trial court had placed the question in issue by its instructions. (6) The only instruction given to the jury on the measure of damages was erroneous in not furnishing the jury with a sufficiently definite rule for their guidance, indicating none of the elements proper for consideration, and excluding none which were improper. It was a "roving commission." *McGowan v. Steel Co.*, 109 Mo. 519; *Goss v. Railroad*, 50 Mo. App. 614; *Schaub v. Railroad*, 106 Mo. 174; *Carpenter v. Cottingham*, 53 Mo. App. 393–404.

*Carlisle & Ottofy* for respondent.

(1) The defendant, having introduced evidence on its own behalf, after its demurrer at the close of

plaintiff's case was overruled, thereby waived its demurrer. *Bowen v. Railroad*, 95 Mo. 275; *Taylor v. Penquite*, 35 Mo. App. 401; *Guenther v. Railroad*, 95 Mo. 286; *Eswin v. Railroad*, 96 Mo. 294; *McPherson v. Railroad*, 97 Mo. 255; *Hilz v. Railroad*, 101 Mo. 36; *Jennings v. Railroad*, 112 Mo. 268. (2) Contributory negligence can be declared as a matter of law only where "no other conclusion could reasonably be drawn from the facts in evidence." *Blanton v. Dold*, 109 Mo. 77; *O'Mellia v. Railroad*, 115 Mo. 221, and cases cited. (3) The master is liable unless he furnished: *First*, suitable material for the staging; *second*, skillful workmen; and, *third*, left the construction of the scaffold to them and retained no supervision over it. If he fails to show these three requisites he is liable. *Bowen v. Railroad*, 95 Mo. 277; *Ackerson v. Dennison*, 117 Mass. 408; *Kelly v. Norcross*, 121 Mass. 508; *Killea v. Faxon*, 125 Mass. 485; *Peschel v. Railroad*, 62 Wis. 344; *Jones v. Co.*, 43 Mo. App. 399. (*a*) "Latent defects in machinery or other appliances are not part of the ordinary risks of employment which even an adult or experienced employee assumes as incidents of his employment." *Clowers v. Railroad*, 21 Mo. App. 217, and cases cited; *O'Donnell v. Baum*, 38 Mo. App. 247, and cases cited. (*b*) And even though the defect is obvious, to exonerate the master, not only the defects, but the danger, must also be known to the servant, and this is for the jury. Wood on Master and Servant [2 Ed.], sec. 376; *Sullivan v. Railroad*, 107 Mo. 78, and cases cited; *Waldhier v. Railroad*, 87 Mo. 46; *Huhn v. Railroad*, 92 Mo. 446; *Stoddard v. Railroad*, 65 Mo. 520. (*c*) He is not bound to look for latent defects; that is the master's duty. Wood on Master and Servant [2 Ed.], sec. 376; *Gutridge v. Railroad*, 105 Mo. 526. (*d*) And, although an obvious defect, it is for the jury to say whether it could have

been discovered by the exercise of ordinary care. *Gutridge v. Railroad*, 105 Mo. 529; *Thorpe v. Railroad*, 89 Mo. 663; Wood on Master and Servant [2 Ed.], sec. 359, p. 739. (*e*) The servant does not assume any risks as to machinery or appliances, excepting when the defect is so patent as to attract his notice and warn him of danger, and the burden is on the master to prove this notice of danger. Wood on Master and Servant [2 Ed.], sec. 359, pp. 740, 741. (*f*) It is the master's duty to provide reasonably safe appliances to enable the servant to discharge his duties with safety. He had a right to presume that the master had discharged his duty in that behalf. *Parsons v. Railroad*, 94 Mo. 286; *Bowen v. Railroad*, 95 Mo. 268; *Johnson v. Railroad*, 96 Mo. 343; *Soeder v. Railroad*, 100 Mo. 673. (4) Where the question "is one upon which men of common information are not capable of forming a judgment," or "one which observation or experience has given an opportunity and means of knowledge which exist in reasons rather than in descriptive facts," it is a case for expert evidence. *Benjamin v. Railroad*, 50 Mo. App. 602; *Riley v. Sparks*, 52 Mo. App. 575; *Johnson v. Railroad*, 96 Mo. 348; *Branson v. Turner*, 77 Mo. 495; *Fitts v. Railroad*, 59 Wis. 331; *Armstrong v. Railroad*, 45 Minn. 87; *Haywood v. Knapp*, 23 Minn. 434; *Commonwealth v. Choate*, 105 Mass. 457. A civil engineer can testify as to the strength of construction and safety of a bridge. He can also express an opinion as to soundness of timbers. Rogers on Expert Testimony [2 Ed.], sec. 106, p. 251; *Indianapolis v. Scott*, 72 Ind. 196. (5) The instruction on the measure of damages, even though erroneous, was harmless error. In order to be an error it must be one against appellant and "materially affecting the merits of the action." 1 R. S. 1889, sec. 2303, and cases cited; *McGowan v. Ore & Steel Co.*, 109 Mo. 519; *Nelson v. Foster*, 66 Mo. 384; *Mitchell v.*

*Bradstreet Co.*, 116 Mo. 244; *Gorham v. Railroad*, 113 Mo. 421; *Henry v. Railroad*, 113 Mo. 538; *Hawes v. Stock Yards Co.*, 103 Mo. 67; *Browning v. Railroad*, 24 S. W. Rep. 735. (6) An appellate court will not interfere on the question of mere weight of evidence unless the preponderance of testimony is very great, and the verdict so strongly opposed to all reasonable probabilities as to be the manifest result of mistake, bias or prejudice. *Mauerman v. Railroad*, 41 Mo. App. 357; *Adler v. Wagner*, 47 Mo. App. 25; *Wilburn v. Railroad*, 48 Mo. App. 225; *Lovell v. Davis*, 52 Mo. App. 349, and cases cited in said decisions. (7) It is only where there is no substantial evidence to support the verdict that an appellate court will interfere. *Russell v. Reagan*, 34 Mo. App. 244; Finkelnburg's Mo. App. Practice, pp. 110–112, and cases there cited.

BRACE, J.—This is an action for damages brought by Carolina Boettger, for the death of her husband Ferdinand or Frank Boettger, who lost his life on the nineteenth day of April, 1892, while in the employment of the defendant. The plaintiff had judgment in the court below for $3,000, and the defendant appeals.

Plaintiff's cause of action as stated in the petition is, "that on the nineteenth of April, 1892, the said deceased was in the employ of defendant in the capacity of a common laborer, whose duty it was to perform such work as might be required of him; that on said day he was ordered by defendant to work upon a scaffold around a tower of a high building, in the city of St. Louis in accordance with directions given him. That it was the duty of the defendant to furnish him with good and reasonably safe and sufficient material for and see that the said scaffold, upon which he was required to work was in a reasonably safe condition; but that defendant, wholly neglecting and disregarding

its duty in that behalf, did furnish said deceased with poor and defective timber wherewith to construct said scaffold, and required him to go upon and work thereon while the same was improperly constructed and not strong enough for the work intended and the weight thereon at the time, which said facts and defects were known to the defendant, or by the exercise of proper care on its part, might have been known to it, but which could not have been discovered by due care and caution by the said deceased; and while the said deceased was working upon the said defective scaffold, so negligently furnished him by the defendant, and while acting under the order of the said defendant the said scaffold broke and fell down, whereby he was precipitated to the ground below and killed.''

The answer contained a general denial and the following special plea: ''And for further answer the defendant says that the said Frank Boettger came to his death by reason of his own negligence directly contributing thereto. That it was his duty as such employee of this defendant to construct, together with fellow servants, the scaffold in question, and the said scaffold was in course of construction when said Boettger came to his death, and said Boettger met his death while assisting in the construction of said scaffold, and that the lumber out of which said scaffold was being constructed, was selected and prepared for said purpose by said Boettger, and if the material was defective it was owing to the negligence of the said Boettger in selecting and preparing and putting it to such use.'' The reply was a general denial.

At the close of the plaintiff's evidence the defendant demurred to the evidence. The demurrer was overruled, and renewed at the close of all the evidence and again overruled, and the cause submitted to the

jury upon the following instructions, after all those asked for by the defendant had been refused.

The court of its own motion gave the following instructions:

"1. In this suit the plaintiff seeks to recover damages for the death of her husband, which, she alleges, was caused by the negligence of defendant. The act of negligence which the plaintiff charges against the defendant is that of furnishing defective material with which to build the scaffold in question. The defendant denies that it was guilty of negligence as charged, and it avers also that the plaintiff's husband was himself guilty of negligence which contributed to cause the accident which resulted in his death.

"2. The act of negligence which plaintiff charges that plaintiff's husband was guilty of is that he himself selected and prepared the lumber that went into the scaffold.

"3. It will be necessary, therefore, for you to decide, under the evidence and these instructions, whether or not the defendant was guilty of the act of negligence charged against it, as above mentioned, and, if yea, then whether or not that negligence caused plaintiff's husband's death. And, unless you are satisfied from the evidence that the defendant was guilty of negligence, as aforesaid, and that that negligence caused the death of the plaintiff's husband, your verdict must be for the defendant.

"4. If you should find from the evidence that the defendant was guilty of the negligence above mentioned, your next inquiry should be, did that negligence cause the death of plaintiff's husband? And in determining that question is involved also the further question whether or not the plaintiff's husband was himself guilty of the negligence above mentioned charged against him; and, if yea, did that negligence

contribute to cause the accident which caused his death.

"5. Though you may find that the defendant was guilty of negligence, yet you would not in law be justified in finding that that negligence caused the death of the plaintiff's husband, if you are also satisfied from the evidence that his own negligence contributed to that result. In other words, the plaintiff can not recover if her husband's death was caused partly by the negligence of the defendant and partly by his own negligence.

"6. In determining these questions of negligence, it will be your duty to observe the relation of the parties to each other, and their relative and respective duties as herein defined.

"7. The law does not require of the employer to furnish his employees in such case material that is absolutely safe; but it does require of him to exercise that degree of care to see that the material used is safe that a man of ordinary common sense and prudence engaged in like business would exercise.

"8. In this case, unless you are satisfied from the evidence that the defendant did not exercise the degree of care above mentioned in the providing of the lumber in question, then you can not find that it was guilty of negligence; but if you are satisfied from the evidence that it did not exercise that degree of care in that respect, then you should find that it was guilty of negligence.

"9. Unless you should find from the evidence that the defendant was guilty of negligence, as above defined, your verdict should be for the defendant.

"10. But if you find that the defendant was guilty of negligence, as above mentioned, your next inquiry should be, did that negligence cause the death of plaintiff's husband. And in that question is involved the

Boettger v. Iron Co.

question, was the plaintiff's husband guilty of negligence that contributed to cause his death.

"11. In considering this last question, you are instructed that if you believe from the evidence that the plaintiff's husband knew that the piece of lumber which broke and caused the accident was defective and insufficient for the use to which it was applied, and that he nevertheless put it or caused it to be put into the scaffold, then he was guilty of negligence contributing to his death, and plaintiff can not recover; but, unless the duty of selecting the lumber in question was a duty that properly devolved on him, or was properly assignable to him in the usual course of his employment, he was under no obligation to examine it, and had a right to presume that the material which the defendant furnished him was sufficient for the purpose, and he would not, under those circumstances, be chargeable with negligence in not examining it.

"12. A man offering himself to hire takes upon himself the ordinary risks incident to the employment and guarantees his own fitness for the work, and if an injury occurs to him which is within the ordinary risk of such employment, or from his own unfitness or unskillfulness, he can not recover; but if he should be assigned to a duty by his employer which is not within the usual scope of his employment which requires skill which he does not possess, if he is injured in attempting to discharge that duty through a failure to exercise such skill, it is the negligence of the employer and not his negligence.

"13. If you believe from the evidence that the plaintiff's husband was ordered to select the lumber in question, and that the doing so was an act reasonably within the scope of the duties for which he was employed, then it was his duty, in making the selection, to exercise that degree of care that a man of ordi-

nary common sense and prudence engaged in that kind of business would have exercised to see that the lumber selected was suitable for the purpose, and if you are not satisfied from the evidence that he did exercise that degree of care, then you should find that he was guilty of negligence, and if you are also satisfied from the evidence that that negligence either caused or contributed to his death, your verdict should be for the defendant; but if you are satisfied from the evidence that he did exercise that degree of care in that respect, then he was not guilty of the negligence charged against him.

"14. If, under all the evidence and these instructions, you are satisfied that the plaintiff's husband was killed through the negligence of the defendant, as above defined, then your verdict should be for the plaintiff, but, unless you are so satisfied, your verdict should be for the defendant.

"15. If you believe from the evidence that the accident which resulted in the plaintiff's death was an accident incident to the business in which he was employed, and was without negligence of either plaintiff's husband or the defendant, then the plaintiff can not recover, and your verdict should be for the defendant."

The court then, at the request of plaintiff, gave the following instruction:

"The jury are instructed that if you find for the plaintiff, you may, in your verdict, give her such damages, not exceeding five thousand dollars, as you may deem fair and just under the evidence in the case, with reference to the necessary injury resulting to her from the death of her husband."

The facts disclosed by the evidence are that the deceased was a strong, healthy man, aged forty-three years, who, at the time of his death, had been in the

employ of the defendant five or six years as an outside laborer in their iron business. The first two years he received $1.50, then $1.75 and at last $2 per day. His family consisted of himself, wife and eight children, the oldest seventeen years and the youngest thirteen months old.

On the nineteenth of April, 1892, the defendant company were erecting the iron work of a porch or balcony about one hundred and twenty-five feet from the ground around the top of a high tower for the Anheuser Busch Brewing Company. In order to do the work, it became necessary to construct a scaffold at that height for the workmen, outside of five iron brackets inserted in the wall of the tower and extending out about three feet therefrom, upon which to perform their labors. This scaffold was constructed by rigging a hanger at the end of each of the five brackets, and extending two by six inch scantling six feet long from the wall outward, resting about midway and edgewise in the hanger, on which boards were laid, making the required platform outside the brackets, the weight of the boards outside the hanger and brackets holding the scantling in place by pressing the other ends against a beam at the wall under which they rested. Upon this scaffold deceased, John Wells, and John Lakas were at work laying down the last of the boards upon the scantling, when about a quarter to six in the evening, the middle scantling broke, just outside the hanger, and the deceased was thereby precipitated to the ground and instantly killed.

The scantling broke at a place where there was a knot or cross-grain in it, running diagonally through the piece from the top to the bottom, and this was the cause of the breaking.

The deceased, John Lakas, and Henry O'Hara, had been detailed from the defendant's force of

laborers to construct this scaffold under the direction of John Wells as foreman. They had been working at it all day, the deceased sawing the lumber therefor into pieces of the required length on the roof of the tower, and passing them out to his fellow workmen Lakas and O'Hara by whom they were put in place. Their work was thus arranged for them by the foreman. The scaffold was being constructed from such lumber as could be found in and around the building, gathered by the deceased, under the directions of the foreman, who told him to pick out good timber. There was evidence tending to prove that O'Hara put in place the piece that broke, that the foreman was present when he was handling it. O'Hara testified that right at the break there was a piece in the wood that looked like cross-grained; "from outside appearance the lumber looked first rate; when I put it in, it looked like pretty fair lumber." The evidence tended to show that the deceased was not a worker in wood, nor a mechanic of any kind; that while he had assisted in erecting many scaffolds, under the directions of a foreman, he had assisted in erecting none like this; that ordinarily the scaffold used by the defendant's workmen consisted of trestles with boards laid on them, prepared and fitted out of lumber selected by the company's carpenter, and carried by the workmen from place to place as needed. The evidence further tended to prove that the defect in the scantling was easily discoverable by one accustomed to work in wood, and its unfitness for the purpose could have readily been detected by a mechanic in that kind of work.

1. There is but little conflict in the evidence as to the material facts in the case or contention between counsel as to the leading propositions of law that should rule it. The difficulty is in the application.

Counsel for defendant contend that, under the facts shown, there is no liability on the part of defendant, unless the pleadings raise the question of the competency of the deceased to discharge the duties in which he was engaged at the time he met his death, and even then the question remains whether there is any evidence to prove that issue, and whether he had a right to be where he was at the time of the accident.

It is beyond question that the immediate cause of the death of the plaintiff's husband was the defect in the scantling which broke; that by reason of such defect it was unfit for the purpose for which it was being used; that such unfitness could have been discovered by a reasonable inspection by a competent person before its use; that it was the duty of defendant to furnish its workmen engaged in the dangerous service of erecting this scaffold with timbers fit for the purpose. But as defendant was not an insurer of the safety of its workmen it was not its duty to furnish timbers absolutely fit and safe for the purpose, but only such as were apparently so, after a proper inspection by a competent person.

It appears from the evidence that, just before the accident, the foreman and the deceased went out on the scaffold, and when it occurred, were engaged with Lakas in laying down the last boards on the scantling, as they were handed out to them from the roof by O'Hara, who as they went out on the scaffold, went in for that purpose. And it can not be doubted that all three of these workmen were at the time engaged in the service of the defendant, within the scope of their employment, and performing their labor with due care under the immediate directions of the defendant's foreman, and that the deceased was lawfully on the scaffold and had a right to be there at the time the timber broke.

It was alleged in the petition that the deceased was in the employ of the defendant in the capacity of a common laborer, and this allegation was amply sustained by the evidence. He was hired and paid for doing the work of a common laborer, subject to the beck and call of his foreman, was not a worker in wood or a mechanic of any kind, and was clearly incompetent to perform the responsible duty of selecting fit material for this dangerous work, a position that required skill and experience. It is also clear from the evidence that the defective scantling got into the scaffold because the defendant had no competent person there whose duty it was to make a proper selection of suitable timber for such structure from a promiscuous lot of lumber, conceding that suitable material therefor might have been found in the lumber provided, of which fact the evidence leaves us in great doubt. For the evidence shows that the foreman was as incompetent to properly make such a selection as was the deceased, if not more so, for it appears, from his own evidence, that he was no worker in wood, and he frankly admits that he was "no judge of it." Incompetent himself, he undertook to devolve the discharge of this delicate and important duty upon the deceased, who had been placed by the defendant under his command, and whose orders he was compelled to obey by the terms of his employment. In such a situation nothing more could be expected or exacted from the deceased, than the exercise of the best judgment of a common laborer, such as he was, in making a selection of the material. For this only was he responsible. For the consequences resulting alone from his want of the requisite skill to make a proper selection, the master is responsible to everybody, to him as well as to another, and the real question is, whether such want of competency could be shown under the plead-

ings to avoid the defendant's plea of contributory negligence.

The answer of the learned judge who tried the case below, to this question, contained in the following extract from his opinion, was that "defendants by their answer not only aver that the plaintiff's husband selected and prepared the lumber, but, in order to support their conclusion, that his selection and preparation of defective lumber was negligence on his part, it was necessary also for them to aver, as they very properly did aver, that the selection and preparation of the lumber was a duty that devolved on him under the terms of his employment. That is what the answer means, and if it did not in effect say that, it would be defective. The general denial contained in the reply, not only traverses the statement that Boettger selected and prepared the lumber, but also the statement that it was his duty under the terms of his employment to do so. Under that issue, then, the question clearly arose whether or not he was properly assignable to that duty. If it was a duty that was incident to his employment he was responsible for the manner in which he performed it, and his want of skill would be no excuse; because, as the instructions declared, when he offered himself to hire to do that kind of work he took upon himself the risk incident to it, and guaranteed his fitness for it. But if it was a duty not incident to his employment he was not responsible, *ex contractu*, for the manner in which he performed it. He could in such case be guilty of negligence only when it appeared that he failed to exercise the skill that he possessed.

"One can not be said to be guilty of negligence in contemplation of law, unless he has failed to do that which it was his duty to have done, or which, under the circumstances, he could be reasonably expected to have done.

"Therefore, when one is charged in a plea with having done a particular act, and that he was negligent in the doing of it, it is equivalent to an averment that he failed to perform a duty that he owed in respect of it, or that he failed to do that which, under the circumstances, he could reasonably be expected to have done. The general traverse of the plea puts all this in issue. If under that issue it appeared from the evidence, that it was one of the duties which Boettger had hired himself to perform, his lack of skill in it would not shield him from the charge of negligence; but, unless it was a duty he had hired himself to perform, the test of negligence was in the question of whether or not it was a duty which, under the circumstances he could be reasonably expected to do; and this question involves a consideration of his skill.

"If, as contended for by the learned counsel for the defendant, the only issue tendered by the answer was that Boettger selected the lumber, and the only effect of the reply was a denial of that statement, then the answer contained no charge of Boettger's negligence at all, and there was no such issue in the case.

"But the answer does not fall short of a good plea and the reply joins issue on every point. When the court undertakes, as it did in this case, to instruct the jury on the whole case, it would have been error to have omitted to submit any question involved in it. No question can be submitted to the jury which is not involved in the pleadings, but the court should not submit the questions to the jury in the technical language of the pleadings, when they can be put in a form of easier understanding.

"I have given this point very careful study in deference to the earnest contention of the learned counsel, and I am entirely satisfied that the question complained

of is raised by the answer and reply.   In this connection it is also  a fact  not be overlooked, that the petition avers that Boettger was a common laborer, which I take to mean one  not skilled in any  particular trade. The further statement  that 'as such  it was  his duty to perform such  work as may be .required of him'  means that  it was his duty  to perform  such  work as may be required of him  as such  common  laborer.   Although these statements are in themselves contradictory of the allegations in the answer which we have been considering, and perhaps  serve  to  emphasize  the point under discussion, yet I think  the  question  complained of is sufficiently pointed  out by the answer  and  reply without resort to these statements in the petition.''

To this answer of the learned  judge we  deem  it necessary to add but one suggestion, and that is that it was also  alleged in the petition  that the defect in the timber was known to the defendant or ''might by the exercise of  ordinary care on its  part have been  known to  it,  but  could  not be discovered with due care and caution  by the  deceased,''  which  allegation was traversed by the answer, thus raising  directly the question of the competency of the deceased to make the selection, and incidentally of his duty in respect thereto.

We think  the  issues in the  case were  properly set out in instructions  and correctly  presented to the jury therein;   except, that in  the eleventh paragraph, the jury were told that:   ''Unless the duty of selecting the lumber in question was a  duty that  properly  devolved upon  him or  was  properly assignable to him  in  the usual course  of his  employment he  was under no obligation to examine it—and had  a right to presume that the material furnished  him was  sufficient for the purpose and  he  would  not under  those circumstances be chargeable with  negligence in not examining it.''

As applicable to the facts of this case we can not indorse the doctrine announced in this paragraph of the instructions. It is to be remembered that the particular lumber out of which this scaffold was to be constructed was not selected and given to the workmen, by the foreman to be simply prepared and put in the scaffold by them, but the deceased was told to select it from a body of material fit or unfit as the case may have been, and that he undertook to make the selection; and, although this was a duty not within the scope of his employment and not properly assignable to him, yet having undertaken it he can not be excused for negligence in not performing it with such skill as he actually possessed; it was his duty under the circumstances, and with his knowledge of the dangerous use to which the timbers were to be subjected, not only to examine the timbers but to bring his best judgment to bear in selecting only such as were in his opinion fit for that purpose. He was not responsible for any mistake of judgment he might make, but he was guilty of negligence if he neglected or refused to exercise such judgment and skill as he in fact possessed in making the selection. We think there was error in this paragraph of the instructions.

2. The admission of expert testimony to show the effect of a knot or cross-grain upon the strength of a piece of timber such as was in question in this case is assigned for error. The following answer of the trial judge to the defendant's objection to that testimony is quite satisfactory.

"The strength of the timber and other building material is a subject within the scope of the science of civil enginering. It is also, though to a less accurate degree, within the scope of a mechanic's skill; and, for the purpose, of this case, a mechanic's opinion would doubtless have been as reliable as that of a civil engineer. And there may be many persons who are neither

carpenters nor civil engineers, who have had sufficient experience with building material to be able to form very correct opinions about the strength of timber and the effect of a knot in a piece like the one in question, but still I think it is not a matter of such common knowledge that every one is presumed to understand it. Like many other points in arts and sciences with which people generally acquire some sort of familiarity, they still remain the subjects of technical knowledge."

3. The generality of the instruction upon the measure of damages is also objected to, but as it is evident from the amount of the verdict that the defendant suffered no injury by reason thereof, the judgment ought not to be reversed on this account. R. S. 1889, sec. 2303; *Haehl v. Railroad*, 119 Mo. 325; *McGowan v. St. Louis Ore & Steel Co.*, 109 Mo. 518; *Browning v. Railroad, ante*, p. 55.

If counsel for defendant desired a more definite instruction on the measure of damages they should have asked for it.

For the error hereinbefore noted in the instructions the judgment will have to be reversed and the cause remanded for new trial, and it is accordingly so ordered. All concur.