## UNITED STATES SMELTING CO. v. PARRY.

(Circuit Court of Appeals, Eighth Circuit. January 6, 1909.)

### No. 2,538.

1. MASTER AND SERVANT (§ 235*) — MASTER'S DUTY IN RESPECT OF SERVANT'S WORKING PLACE—SERVANT'S RIGHT TO ASSUME THAT MASTER'S DUTY HAS BEEN PERFORMED—EXCEPTION.

It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his servant, and the latter is entitled to act upon the assumption that that duty has been performed, unless the contrary be known to him, or be so patent as to be readily observed by him. He is not required to make an investigation or inspection, to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him by the reasonable use of his senses. having in view his age, intelligence, and experience.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 713; Dec. Dig. § 235.*]

2. EVIDENCE (§ 474*) — EXPERT AND OPINION TESTIMONY — TEST OF ADMISSIBILITY.

The general rule that witnesses are permitted to testify to the primary facts within their knowledge, but not to their opinions, is subject to the important qualification that witnesses possessed of special training, experience, or observation in respect of the matter under investigation may testify to their opinions. when that will tend to aid the jury in reaching a correct conclusion ; the true test being. not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2196; Dec. Dig. § 474.*]

3. APPEAL AND ERROR (§ 970*)—EXPERT AND OPINION TESTIMONY—DISCRETION OF TRIAL JUDGE.

A certain discretion is accorded the trial judge in respect of the admission or rejection of expert and opinion testimony, and his decision admitting testimony of that character ought not to be disturbed. unless it plainly appears that the testimony was not calculated to aid the jury in reaching a correct conclusion, and was calculated to prejudice their minds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3849; Dec. Dig. § 970.*]

4. DAMAGES (§ 216*)—PERSONAL INJURY—MENTAL SUFFERING.

In an action to recover for personal injuries, an instruction which names "mental suffering due to the injury" as one of the elements to be considered is not objectionable, as permitting the consideration of mental suffering which is separable from and independent of the physical injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 555; Dec. Dig. § 216.*

Mental suffering as an element of damage in general, see note to Chicago, R. I. & P. Ry. Co. v. Caulfield, 11 C. C. A. 556.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TRIAL (§ 256*)—CHARGE TO JURY—GENERAL EXCEPTION.
  When a litigant is concerned lest the jury may misinterpret a portion
  of the charge unless it be explained, he should request an appropriate ex-
  planation of it, and not rest upon a general exception to it.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628, 629; Dec. Dig.
  § 256.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District
of Utah.

C. S. Varian and Andrew Howat (W. Van Cott, E. M. Allison, Jr.,
and W. D. Riter, on the brief), for plaintiff in error.

Thomas Marioneaux (O. W. Powers, on the brief), for defendant
in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and
PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action to recover
for personal injuries sustained by a brick mason through the tipping of
a plank in a temporary scaffold provided as a working place for him.
The evidence produced upon the trial, although somewhat contra-
dictory, reasonably tended to establish these facts: The defendant, in
whose service the plaintiff was, was erecting a brick cross-wall between
two outer walls, already partially completed, which conveniently may
be spoken of as the east wall and the west wall. Between these outer
walls, and parallel with them, was a partition wall, which also con-
nected with the cross-wall. The scaffold extended along the cross-
wall, from the west wall to the partition wall, and consisted of five or
six heavy planks, supported at one end by another scaffold along the
west wall and near the other end by a four-legged carpenter's trestle.
The trestle was as close to the partition wall as it could be, but the
inclination of its legs was such that its top, upon which the planks
rested, was a foot away from that wall. At that end the planks pro-
jected beyond the trestle from 21 to 30 inches; the projection of those
next the cross-wall being less than that of the others, as was stated
by a witness named Croisette. In this way the planks extended half-
way or entirely over the top of the partition wall, which was 18 inches
wide and about 14 inches below the scaffold. It was usual, in the
erection of such a scaffold, to make provision against the tipping of
the planks, either by placing a foot lock under the projecting end or
by nailing down the other end. Either method would have been prac-
ticable and efficient in this instance, but neither was followed. T...
scaffold was erected under the direction of the defendant's foreman
before the plaintiff went upon it, and when he had been at work there
a short time one of the planks tipped, and precipitated him into a pit
25 feet below, between the partition wall and the east wall. He had
nothing to do with the erection of the scaffold, did not know of the
failure to make provision against the tipping of the planks, and did
not observe anything indicating that they were not secure. He went
upon the scaffold at the foreman's direction, and in doing so did not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

see underneath it, because he approached it from the other side of the cross-wall, which was a little higher than the scaffold. The work assigned to him by the foreman required him to use the extreme east end of the scaffold, as was stated in his direct examination and in the cross-examination of an opposing witness named Lundquist. When he went upon the scaffold he found another brick mason working at the west end. Brick to be laid into the east part of the cross-wall were also near by. Neither the absence of a foot lock nor the failure to nail down the other end of the planks was observable by one in his situation without some investigation or inspection of the scaffold, such as going to the other end and looking for evidence of nailing, or lying down and looking underneath for a foot lock. He did neither of these things, but assumed that the planks had been made secure, and proceeded with the work assigned to him, which included the laying of brick into the cross-wall on the east side of the partition wall. At first he sat on the end of the scaffold, with one foot hanging over it, and laid into the wall the brick which were near by. Then he went to the center of the scaffold for more brick, and was returning with five or six of them on his arm when one of the planks tipped, as he stepped near its end, and caused him to fall. That plank was the second one from the cross-wall, and was not incumbered by the mortar boards or brick which were upon the scaffold. The other mason had been standing upon the west end of that plank, but moved away to get mortar or brick about the time it tipped. A foot lock, as here spoken of, is a support for a scaffold, and consists of a short joist, one end of which is inserted into the wall along which the scaffold is to be used, and an upright post placed under the other end of the joist to sustain it in a horizontal position. Ordinarily a four-legged trestle is a better support, but a foot lock is employed to greater advantage in situations where a trestle, by reason of its projecting legs, cannot be brought sufficiently near the end of the scaffold to prevent the ends from tipping. In this instance a foot lock could readily have been placed nearer the partition wall, or even on top of it. Planks, such as were used, cannot with safety be permitted to project beyond their point of bearing more than one foot, unless they are made secure, by nailing or otherwise, at the other end. The plaintiff was a brick mason of extended experience, was familiar with the various modes of constructing scaffolds, and fully understood the dangers attending their use when they were not made secure.

The first question to be considered is whether the court erred in denying a request, preferred by the defendant, for a directed verdict in its favor. It is not seriously insisted, nor could it be, that the evidence did not justify a finding of actionable negligence on the part of the defendant, under the state statute; but it is earnestly contended that it was conclusively shown that the plaintiff assumed the risk and was guilty of contributory negligence because he did nothing to satisfy himself of the security of the scaffold, and because it would have taken but a moment to ascertain how the planks were supported at the east end and whether they were nailed at the other end. The contention cannot be sustained. It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his

servant, and the latter is entitled to act upon the assumption that that duty has been performed, unless the contrary be known to him, or be so patent as to be readily observed by him. He is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience. Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Choctaw, Oklahoma & Gulf R. R. Co. v. Holloway, 191 U. S. 334, 337, 24 Sup. Ct. 102, 48 L. Ed. 207; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. ——; Burke v. Union Coal & Coke Co., 84 C. C. A. 626, 157 Fed. 178; Missouri, K. & T. Ry. Co. v. Wilhoit, 87 C. C. A. 401, 160 Fed. 440; Chicago, Milwaukee & St. Paul Ry. Co. v. Donovan, 87 C. C. A. 600, 160 Fed. 826; Chicago Great Western Ry. Co. v. McDonough (C. C. A.) 161 Fed. 657, 661; Kirkpatrick v. St. Louis & S. F. R. Co., 87 C. C. A. 35, 159 Fed. 855; Western Investment Co. v. McFarland (C. C. A.) 166 Fed. 76. The evidence before recited made it at least permissible for the jury to find that the insecure condition of the scaffold, although discoverable by an investigation or inspection, was not known to the plaintiff, and was not so patent as to be readily observed by him, without more than a reasonable use of his senses. True, when he was sitting upon the end of the scaffold, he could have leaned over sufficiently to have looked thereunder, and, had he done so, could have seen that no foot lock was there; but he was not required to make even that effort at investigation or inspection, if, as was positively stated by him, nothing occurred to indicate that any of the planks was insecure. And, had he seen that no foot lock was there, he still would have been entitled, in the absence of any indication to the contrary, to assume that the planks had been made secure by nailing at the other end.

The matter next to be considered is the admission, over the defendant's objection, of testimony by a practical brick mason and builder of many years' experience to the effect that a scaffold constructed and supported like the one in question was not as safe as those usually provided in like situations, but was very dangerous, because the weight of a man upon the projecting end of one of the planks was sure to make it tip. The objection made was, not that the witness was not qualified to speak as an expert, but that his opinion was elicited upon a matter which it was the province of the jury to decide, and which they were capable of deciding without such testimony. It is true that in trials by jury it is their province to determine the ultimate facts, and that the general rule is that witnesses are permitted to testify to the primary facts within their knowledge, but not to their opinions. And it is also true that this has at times led to the statement that witnesses may not give their opinions upon the ultimate facts which the jury are to decide, because that would supplant their judgment and usurp their province. But such a statement is not to be taken literally. It but reflects the general rule, which is subject to important qual-

ifications, and never was intended to close any reasonable avenue to the truth in the investigation of questions of fact. Besides, the tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts, and to disturb his decision admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue and was calculated to prejudice the minds of the jurors. Holmes v. Goldsmith, 147 U. S. 150, 164, 13 Sup. Ct. 288, 37 L. Ed. 118; Williamson v. United States, 207 U. S. 425, 451, 28 Sup. Ct. 163, 52 L. Ed. 278; Alexander v. United States, 138 U. S. 353, 356, 11 Sup. Ct. 350, 34 L. Ed. 954; Moore v. United States, 150 U. S. 57, 60, 14 Sup. Ct. 26, 37 L. Ed. 996; Clune v. United States, 159 U. S. 590, 592, 16 Sup. Ct. 125, 40 L. Ed. 269. And it is in keeping with this modern tendency that it is now generally held, as stated in Chicago Great Western Ry. Co. v. McDonough (C. C. A.) 161 Fed. 657, 662, and in the cases there cited, that whether or not a witness tendered as an expert is qualified to testify as such rests largely in the discretion of the trial judge, and that his decision thereon ought not to be disturbed, unless it can be said that it was manifestly erroneous.

The most important qualification of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness. A reference to adjudicated cases will show the extent of this qualification, its application in actual practice, and the discretion accorded to the trial judge in that regard. In Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477, there was called in question a ruling of the Circuit Court whereby a witness of large experience in towing vessels was permitted to testify that in his opinion it was not safe or prudent for a tugboat in Chesapeake Bay to tow three boats abreast, with a high wind; that being the point to be decided by the jury. The ruling was sustained; it being said in that connection:

"The witness was an expert, and was called and testified as such. His knowledge and experience fairly entitled him to that position. It is permitted to ask questions of a witness of this class which cannot be put to ordinary witnesses. It is not an objection, as is assumed, that he was asked a question involving the point to be decided by the jury. As an expert he could properly aid the jury by such evidence, although it would not be competent to be given by an ordinary witness. It is upon subjects on which the jury are not as well able to judge for themselves as is the witness that an expert as such is expected to testify. Evidence of this character is often given upon subjects requiring medical knowledge and science, but it is by no means limited to that class of cases. It is competent upon the question of the value of land (Clark v. Baird, 9 N. Y. 183; Barss v. Copely, 10 N. Y. 93); or as to the value of a particular breed of horses (Harris v. Panama Railroad Co., 36 N. Y. Super. Ct. 373); or upon the value of the professional services of a lawyer (Jackson v. New York Central Railroad Co., 2 Thomp. & C. [N. Y.] 653); or on the question of negligence in moving a vessel (Moore v. Westervelt, 9 Bosw. [N. Y.] 558); or on the necessity of a jettison (Price v. Hartshorn, 44 N. Y. 94,

4 Am. Rep. 645). In Walsh v. Washington Marine Insurance Co., 32 N. Y. 427, it was decided that the testimony of experienced navigators on questions involving nautical skill was admissible. The witness in that case was asked to what cause the loss of the vessel was attributable, which was the point to be decided by the jury. The court sustained the admission of the evidence, using this language: 'We entertain no doubt that those who are accustomed to the responsibility of command, and whose lives are spent on the ocean, are qualified as experts to prove the practical effect of cross-seas and heavy swells, shifting winds, and sudden squalls.' The books give a great variety of cases in which evidence of this character is admissible, and we have no doubt of the competency of the evidence to which this objection is made."

Spring Company v. Edgar, 99 U. S. 645, 25 L. Ed. 487, turned upon whether or not a mature male deer was a dangerous animal during the fall of the year, the rutting season, and the Circuit Court permitted a dentist and a taxidermist, both somewhat familiar with the habits and nature of deer, to testify that, in their opinion, a mature buck was dangerous and vicious during that season. The Supreme Court declined to disturb the ruling, and said:

"Whether a witness is shown to be qualified, or not, as an expert, is a preliminary question, to be determined in the first place by the court; and the rule is that, if the court admits the testimony, then it is for the jury to decide whether any, and, if any, what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous. * * * Even if the witnesses are not properly to be regarded as experts, the court is of the opinion that the testimony was properly admitted as a matter of common knowledge."

In Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. 533, 28 L. Ed. 536, there arose the question of the competency of the impressions and opinions of nonprofessional witnesses as to the mental condition of an insured person whose conduct they had observed, and it was held that such testimony was competent, if accompanied by a statement of the grounds upon which it rested, that it possessed an intrinsic value which would tend to aid the jury in reaching a correct conclusion, and that such testimony could not be held inadmissible without closing an important avenue of truth in such cases.

In Union Ins. Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534, 31 L. Ed. 497, it was held permissible for experienced seamen to testify that, under circumstances known to them, it was not the exercise of good seamanship or reasonable prudence to attempt to tow a disabled vessel out of a port of repair and safety and across Lake Erie; and this when that was the ultimate question to be decided by the jury.

In Northern Pacific Railroad v. Urlin, 158 U. S. 271, 15 Sup. Ct. 840, 39 L. Ed. 977, it was held admissible for physicians, testifying as experts, to state whether an examination of the plaintiff's person was made in a superficial or in a careful and thorough manner; and this although it was objected that it was taking from the jury a question which it was their province to decide. In Texas & Pacific Ry. Co. v. Watson, 190 U. S. 287, 23 Sup. Ct. 681, 47 L. Ed. 1057, where a qualified witness was asked whether, if an engine conducted itself in a way particularly described, he would say there was anything wrong

about its operation or construction, it was ruled that the question was admissible, as tending "to aid the jury in determining the ultimate fact whether an engine was in good repair and properly operated which conducted itself" in the way described.

And in Gila Valley R. R. Co. v. Lyon, 203 U. S. 465, 27. Sup. Ct. 145, 51 L. Ed. 276, where the ultimate fact for the jury's determination was whether a railroad company had exercised reasonable care to provide a reasonably safe buffer at the end of a spur track, terminating at a deep cañon, and where the trial court permitted certain railroad employés familiar with such matters to testify that, in their opinion, the buffer was not a safe or proper one, but was unsafe and ineffective, the Supreme Court declined to disturb the ruling, and used this language:

"In the cases of all the witnesses, we think the question of the admissibility of their evidence was one within the reasonable discretion of the trial court, and that the discretion was not abused. All the witnesses had had practical experience on railroads, and were familiar with structures and the character of buffers mentioned in the evidence. There was certainly enough to call upon the court to decide upon the admissibility of their opinions under these circumstances, and we ought not to interfere with the decision of the trial court in this case."

In St. Louis, etc., Co. v. Edwards, 24 C. C. A. 300, 78 Fed. 745, this court, upon much consideration, held that a witness of extended experience in handling and shipping cattle, and who had attended a shipment then in question, could properly give his opinion as to the amount of damage sustained by the cattle by reason of their long detention in the cars, and in that connection it was said:

"The general rule undoubtedly is that witnesses are to testify to facts, and not to give their opinions; but this rule has its exceptions, as familiar and well settled as the rule itself. The exceptions rest upon the common ground of necessity. Among these exceptions is this one: That a witness, having special knowledge and experience as to the value of property, animate or inanimate, and as to how the value of such property is affected by certain conditions or treatment, may give his opinion as to how much the property was damaged or benefited by such conditions or treatment. In many cases witnesses are allowed to testify to their opinions, not because they are experts in the technical sense of that term, but because they have special knowledge of the particular facts in the case, which the jurors have not."

In Western Coal & Mining Co. v. Berberich, 36 C. C. A. 364, 94 Fed. 329, where one of the ultimate questions for the jury was whether a certain room in a coal mine was a reasonably safe working place, and where an old and expert miner, familiar with all the surroundings, was permitted to give his opinion as to "whether or not that [the room] would be an ordinary safe place to work," this court unanimously declined to disturb the ruling and approved the following observations of a very learned jurist respecting the rule "by which appellate courts should be guided":

"But there is nothing which tends to belittle the authority of the courts or to impair the confidence of the public in the certainty of justice as much as the habit of reversing cases for slight errors in admitting testimony, or trifling slips in the charge. * * * Better by far the practice of the English courts and the federal Supreme Court, where every intendment is made in favor of the action of the lower court, and cases are rarely reversed except

for errors going to the very merits—errors which usually obviate the necessity of a second trial."

In Chicago Great Western Ry. Co. v. Price, 38 C. C. A. 239, 97 Fed. 423, where this court had occasion to consider a ruling permitting a locomotive engineer to testify that a rough and uneven track had a tendency to jostle the pin out of a car coupling, and thus to part a train, the ruling was left undisturbed; the court saying:

"The trial court was of the opinion that the testimony of this witness fell under the exception to the rule, and we are not convinced that there was any error in this view. The line of demarcation between competent and incompetent expert testimony is not always clear and definite, and judgments ought not to be reversed on account of the reception or rejection of such testimony, unless there was a clear violation of the rule."

And Southern Pacific Co. v. Arnett, 50 C. C. A. 17, 111 Fed. 849, was an action to recover for alleged improper confinement and treatment of cattle while in transit, wherein the Circuit Court permitted witnesses, possessing greater knowledge of such matters than the average man, to testify that 26 or 28 hours was "long enough" to confine cattle in cars without feed or water, that the cattle were given "a very poor run," that the cause of the delay in getting them to their destination was one which was more apt to happen "with a poor class of engines," and that their bad condition on their arrival was due to the fact that they "had been very badly handled, and perhaps misused, on the cars"; but this court held that there was no reversible error in the admission of that testimony, and that holding was repeated substantially when the case was here a second time. 61 C. C. A. 131, 138, 126 Fed. 75, 82.

The same rational view of the use of expert and opinion testimony is also maintained in many of the state courts, as the following cases will show: Porter v. Pequonnoc Mfg. Co., 17 Conn. 249, 255; Taylor v. Town of Monroe, 43 Conn. 36, 44; Beatty v. Gilmore, 16 Pa. 463, 468, 55 Am. Dec. 514; Fitts v. Cream City R. R. Co., 59 Wis. 323, 331, 18 N. W. 186; Zarnic v. Coal Co., 133 Wis. 290, 301, 113 N. W. 752; McPherson v. St. Louis, etc., Co., 97 Mo. 253, 10 S. W. 846; Boettger v. Iron Co., 124 Mo. 87, 104, 27 S. W. 466; Combs v. Construction Co., 205 Mo. 367, 389, 104 S. W. 77; Prendible v. Connecticut Mfg. Co., 160 Mass. 131, 35 N. E. 675; Kuhn v. Delaware, etc., Co., 92 Hun, 74, 77, 36 N. Y. Supp. 339; Id., 153 N. Y. 683, 48 N. E. 1105; Fox v. Buffalo Park, 21 App. Div. 321, 331, 47 N. Y. Supp. 788; Id., 163 N. Y. 559, 57 N. E. 1109; Hayes v. Southern Pacific Co., 17 Utah, 99, 53 Pac. 1001; Wilson v. Harnette, 32 Colo. 172, 75 Pac. 395. And the statement of when it may be used, which is at once the most satisfactory and the most concise of all, is the one given in Taylor v. Town of Monroe, where the Supreme Court of Errors of Connecticut says:

"The true test of the admissibility of such testimony is not whether the subject-matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue."

Of course, running through all the decisions is the implication, if not the express statement, that if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation, then the general rule is to be applied, and not its qualification or exception, as is illustrated in the following cases: Milwaukee, etc., Co. v. Kellogg, 94 U. S. 469, 472, 24 L. Ed. 256; Inland & Seaboard Coasting Co. v. Tolston, 139 U. S. 551, 560, 11 Sup. Ct. 653, 35 L. Ed. 270; Motey v. Pickle, etc., Co., 20 C. C. A. 366, 370, 74 Fed. 155; National Biscuit Co. v. Nolan, 70 C. C. A. 436, 138 Fed. 6; Lake v. Shenango Furnace Co. (C. C. A.) 160 Fed. 887, 894.

Applying the true test to the testimony now under consideration, we think it cannot well be said that it was plainly inadmissible. Doubtless the farmers, stockgrowers, merchants, and clerks who composed the jury were more or less capable of judging of the safety of the scaffold in question and of the necessity for securing the planks in one of the modes suggested; but it is quite reasonable to believe that they were not as capable of doing so as a practical brick mason and builder of many years' experience in the use and construction of scaffolds, and that the opinion of a witness possessed of the special knowledge which is born of such experience was calculated appreciably to aid them in reaching a correct conclusion. At all events, the trial judge was of opinion that the testimony was calculated to aid them, and therefore admitted it in evidence, and we are not persuaded that he exceeded the limits of his discretion.

Lastly, it is to be considered whether there was error in the following instruction on the measure of damages:

"If the plaintiff is entitled to any verdict at your hands, he is entitled to compensation. That compensation should be compensation for his pain and physical suffering and his mental suffering due to the injury, and also for the permanent impairment of his earning capacity, if any such impairment is shown by the evidence. In considering the impairment to his earning capacity, you will make up your mind whether it is simply temporary or permanent. He is entitled to compensation for that impairment in the past, and also for such future impairment as you are satisfied by the evidence he will suffer."

The defendant excepted to the words "and his mental suffering due to the injury," but did not ask that they be explained in any way. It is now urged that the instruction permitted the jury to consider mental suffering even though it was separable from and independent of the physical injury, which would be contrary to the settled rule in this jurisdiction. Chicago, etc., Co. v. Caulfield, 11 C. C. A. 552, 63 Fed. 396; Southern Pacific Co. v. Hetzer, 68 C. C. A. 26, 135 Fed. 272, 1 L. R. A. (N. S.) 288; Kennon v. Gilmer, 131 U. S. 22, 26, 9 Sup. Ct. 696, 33 L. Ed. 110; McIntyre v. Giblin, 131 U. S. clxxiv, 9 Sup. Ct. 698, note, 25 L. Ed. 572; McDermott v. Severe, 202 U. S. 600, 611, 26 Sup. Ct. 709, 50 L. Ed. 1162. But the contention is not tenable. It fails to give effect to the qualifying words, "due to the injury," which bring the instruction within the ruling in

McIntyre v. Giblin, supra. Besides, if the defendant was concerned lest the jury might interpret the instruction in the manner now suggested, it should have requested some explanation of it, instead of taking an exception the fair import of which was that it was objecting to any mention of mental suffering. McDermott v. Severe, supra; Southern Pacific Co. v. Maloney, 69 C. C. A. 83, 136 Fed. 171; Chicago Great Western Ry. Co. v. McDonough (C. C. A.) 161 Fed. 657, 660.

An attentive consideration of the record and of the arguments of counsel discloses no reversible error, and so the judgment is affirmed.