## BALTIMORE & O. R. CO. v. BURRIS.

(Circuit Court of Appeals, Sixth Circuit.   November 11, 1901.)

### No. 895.

1. RAILROADS—DEBTS OF RECEIVERSHIP—ORDER REQUIRING ASSUMPTION BY COMPANY.

A railroad company allowed to resume possession of its property, which has been in the hands of receivers in a foreclosure suit, by an order of the court which reserved jurisdiction to adjudicate and settle all claims against the receivers, and required the company to pay all debts and claims which should be adjudged valid, by the acceptance of such condition becomes bound to pay such claims, and may properly be made defendant in a petition of intervention subsequently filed in the cause by a person injured through the alleged negligence of the receivers, and in such case the court will take judicial notice of the terms of its former order.

2. MASTER AND SERVANT—DEFECTIVE RAILROAD CAR—PROOF OF NEGLIGENCE UNDER OHIO STATUTE.

By Bates' Rev. St. Ohio, § 3365-21, the burden of proof of want of knowledge of a defect in any car or locomotive, and of due diligence to ascertain it, rests upon a railroad company, where it is shown that such defect existed, and that by reason thereof an employé was injured.

3. SAME—RULES OF RAILROAD COMPANY—REQUIRING CONDUCTORS TO INSPECT CARS.

By a rule of a railroad company conductors of freight trains were required to be at the starting points of their trains at least 40 minutes before leaving time, and, among other things, to see that their cars were in proper running order before starting.   It was shown that the other duties imposed upon the conductors during such time were such as to require the greater portion of it.   *Held* that, under a reasonable construction, the rule did not require a conductor to critically examine the several cars in his train, and the attachments thereto, with the particularity which measured the duty of the company iself, but only that he should take a general survey of the train, and take notice whether, to all appearances, the cars were in proper order, and remedy any defect discovered; and that the fact that the end of a brake beam on a car was down, dragging on the track, before the train had cleared the yards at a considerable distance from the starting station, was not sufficient to charge the conductor with negligence as matter of law.

4. SAME—INJURY OF CONDUCTOR—CONTRIBUTORY NEGLIGENCE.

As a freight train was passing out of the yard at a station some one on the ground called to a brakeman that something was out of order. The brakeman did not understand, but reported to the conductor, who was in the caboose, and was directed to go forward on the train, and ascertain, if possible, what was wrong.   He discovered that the end of a brake beam on a car had dropped down, and was dragging on the track. The conductor then went forward, and attempted to signal the engineer to stop, but before he could do so, while the train was crossing a bridge, the car was thrown from the track, breaking the bridge, and falling through, and the conductor, falling with it, was seriously injured. *Held*, that he could not be charged with contributory negligence as matter of law, because he sent the brakeman ahead in the first instance, instead of going himself, but that the question was properly submitted to the jury.

5. SAME—BURDEN OF PROOF.

It is the well-settled rule in the courts of the United States that the burden of proving contributory negligence, in an action by a servant for a personal injury, rests upon the defendant.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

J. H. Collins, for plaintiff in error.

Ulric Sloane and Thomas E. Steele, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. This suit was brought by way of an intervening petition, by Burris, who, while he was the conductor of a freight train in the service of receivers of the railroad company appointed by the court in a case hereinafter mentioned, was severely injured in an accident which happened on the railroad in consequence, as he alleged, of the negligence of the receivers. There was a verdict and judgment for the plaintiff in the sum of $5,000.

When the accident occurred there was pending in the equity side of the court below a suit for the foreclosure of a mortgage, the title of which was the Mercantile Trust Company against the Baltimore & Ohio Railroad Company. Shortly thereafter the court made an order in that case directing the receivers to turn over the railroad property to the company, and to render a report of their receipts and disbursements, etc., reserving, among other things, the adjudication and settlement of all claims against the receivers; and it was expressly provided in the order that the company should take the property upon the condition that it should pay off and satisfy all debts and obligations incurred by the receivers, and which might be adjudged by the court to be valid charges against the receivers. Subsequently, by permission of the court, Burris filed this, his intervening petition, against the railroad company to recover the damages sustained by him from the injury above mentioned.

By its answer, by a motion for judgment upon the pleadings, and by motion in arrest of judgment, the defendant urged as a defense that the liability, if there was any, rested upon the receivers, and not upon the company, for the reason that the company did not have either the possession or control of the railroad when the injury occurred. The court, referring to the condition which it had imposed by its order putting the company in possession, that the latter should become chargeable with the obligations of the receivers, overruled the objection.

Upon the trial testimony was given tending to show the following facts: The freight train of which the plaintiff was conductor left Newark, Ohio, for the East about 7:30 o'clock in the morning, and consisted of an engine and 32 cars, the rear one of which was the caboose. While the train was passing the outer limits of the yard at that station an employé of the company called out to those on board, signifying that there was something wrong about the train. A brakeman heard him, but did not understand what the trouble was. He informed the conductor, who was reading over his waybills in the caboose, of what he had heard from the man in the yard about some trouble with the train. The conductor directed him to go forward, and find out what was the cause of the warning. On going over the cars to about the middle of the train, the brake-

man discovered that one end of a brake beam upon a car in the train belonging to another company had dropped down, and was dragging upon the track. He returned, and informed the conductor, who thereupon went forward himself, and tried to signal the engineer to stop the train. But he failed to catch the engineer's attention until the train reached and was passing over a bridge, when the car having the dragging brake beam was by it thrown from the tracks upon the trestlework of the bridge, breaking it down, and falling, with it, into the ravine below. The conductor fell with the car, and was badly hurt.

The principal grounds of the defense upon the merits were that—First, it was, by a rule of the company, made the duty of the conductor to inspect his train before starting, and find out whether it was in order, which duty, it was claimed, he must have neglected, and hence was not entitled to recover; second, that he was guilty of negligence in not going forward himself when he was notified by the brakeman that something was wrong with the train, instead of sending the brakeman. And at the close of the evidence the defendant, upon these grounds, asked for an instruction to the jury that they find a verdict in its favor. This the court refused, and the cause was submitted to the jury under instructions pertinent to the case.

Four objections to the recovery are mainly relied on by counsel for the plaintiff in error:

1. It is objected that the court erred in holding that the action was properly brought against the railroad company, notwithstanding the injury happened while the receivers were in possession of and operating the road, and authority is cited in support of the proposition that in such case the receivers, and not the company, are responsible. The general rule thus stated is not doubted, and has been recognized and applied by this court. Railroad Co. v. Hoechner, 14 C. C. A. 469, 67 Fed. 456. But here was the further and controlling fact that by the order under which the company had been allowed to resume possession of the road it was charged with, and by its acceptance of the privilege given it by the court had assumed and agreed to satisfy, all the obligations of the receivers, this among them. This is not an infrequent course in such cases, and it effectually removed the ground for the objection. But it is said the court had no authority to go out of the record of this proceeding, and inform itself, without proof that such an order had been made. But this proceeding was a parcel of the foreclosure case,—a mere intervention therein,—and it was competent for the court to take judicial notice of the orders which it had made in the principal case relating to claims arising during its pendency. Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296.

2. Respecting the contention that the conductor was to be held conclusively negligent in not discovering by inspection of his train that the brake beam was down, it is to be observed, in the first place, that by a statute in Ohio, where the injury happened, a prima facie presumption is raised that any such defect as this existed and

was continued by the negligence of the company. The statute is this (Bates' Rev. St. § 3365–21):

"It shall be unlawful for any such corporation to knowingly or negligently use or operate any car or locomotive that is defective or any car or locomotive upon which the machinery or attachments thereto belonging are in any manner defective. If the employé of any such corporation shall receive any injury by reason of any defect in any car or locomotive, or the machinery or attachments thereto belonging, owned and operated or being run and operated by such corporation, such corporation shall be deemed to have had knowledge of such defect before and at the time such injury is so sustained, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this state, brought by such employé, or his legal representatives, against any railroad corporation for damages, on account of such injuries so received, the same shall be prima facie evidence of negligence on the part of such corporation."

The burden of proof of want of knowledge of an existing defect and of due diligence in ascertaining it is thus cast upon the company. Railroad Co. v. Erick, 51 Ohio St. 146, 37 N. E. 128; Felton v. Bullard, 37 C. C. A. 8, 94 Fed. 781, the latter being a case determined in this court.

By the company's rule No. 471, it was provided that:

"Freight conductors and brakemen are required to be at the starting points of their trains at least forty minutes before leaving time, to see that their trains are ready for departure on time; they are required to see that their cars are in proper running order before starting, and examine them at water stations, stopping places, and wherever opportunity offers, to see if the running gear, brakes, etc., are in proper order."

And it is contended that, if Burris had performed the duty enjoined by this rule, he would have seen that the brake beam was out of place, and saved himself from suffering the injury. But it is obvious that it is not intended by this rule that the conductor should critically examine the several cars in his train, and the attachments thereto, with that degree of particularity which measures the duty of the company itself. Other employés (the car inspectors) are charged with that special duty, and, besides, the time prescribed for his preparations for leaving would frequently, if not ordinarily, be insufficient for him to make such thorough examination in addition to the other duties imposed upon him for execution within the time mentioned.

The rule must be given a reasonable construction so as to render its observance practicable. According to the testimony, he was required first to report to the yard office, and there learn where the train was which he was to take. Then he must go to the caboose for the train book with which to check up the train. From there he must go the whole length of the train, taking the number of each car, its description, and ownership. He must see if the seals of each car are unbroken, take the number of the seals, and the name of the company to whom the seals belong. Then he must return to the yard office, and get his waybills. From there he must go to the train dispatcher's office for his running orders, and remain there while these orders, which are in triplicate, are compared. Then he returns to his train, and, having compared his watch time with that of the engineer, gives the signal to start, standing by as the cars

pass, and getting on the caboose as that goes by. And the train might be at a part of the yard distant from the offices. He is undoubtedly required by this rule to take a general survey of his train, and take notice whether to all appearances everything is in proper order, and, further, if he discovers any defect, to see that it is removed before starting. The court charged the jury substantially in accordance with the views we have expressed in regard to the proper construction of the statute respecting the duty of the company and the burden of proof of due diligence and of the rule relating to the duty of the conductor, and it follows that the assignments of error in the instructions upon those subjects are not sustained.

The plaintiff testified that he looked at the brake beams on the cars as he passed along them, and saw nothing out of order, but that he did not get down and examine all of them. We cannot say, in view of the evidence, that the jury were not justified in finding, as they did, that the plaintiff was not at fault in respect to his observance of the duty imposed by the rule referred to. The distance from the place of starting to the yard limits, where the defect was first noticed, was considerable. From the evidence the jury might have not unreasonably concluded that the brake beam had not fallen down when the train started; for, if it had, the indication would have been so manifest that the conductor could hardly have failed to notice it. And yet the jury might have been satisfied that its hangings were weak or insecure, and that, if thorough inspection had been given, the fact would have been discovered, but that the defect was not so apparent that the plaintiff ought to be charged with fault in not seeing it.

3. Another assignment of error raises the question whether there was such proof of negligence on the part of the conductor in sending forward the brakeman to find out whether there was any defect in the train which needed attention. There was testimony that some one standing near by, just as it was leaving the yard, called out that there was something wrong with the train. This was heard by a brakeman on board, who, when testifying, said:

"I went and told the conductor that this fellow halloed at me about something,—something about 'brakeman.' I could not understand what he said. I could not understand his words at all. Something,—'brakeman,' or something of that kind. He halloed, and pointed toward the train, and I told the conductor, and he told me to go over and see if I could find out what was wrong."

He went accordingly, and came back with the report that a brake beam was 'down. Thereupon the conductor at once proceeded to take measures to stop his train, but was unable to do so in time to avert the disaster. The conductor testified that when the brakeman spoke to him of hearing the man calling out he was busy in the caboose reading his train orders, and for that reason sent the brakeman to examine. It was a question for the jury to determine whether the probability of danger in what the brakeman told him he had heard was such that the conductor was guilty of negligence in sending the brakeman to find out what the matter was instead of going himself. We cannot hold that the court was wrong in refusing to say

that the only reasonable conclusion was that the conductor was at fault. The rule which defines the province and duty of the court in such cases has been so often declared by the supreme court and by this court that it is needless to repeat it. The last case upon that subject in this court was that of Railroad Co. v. Truett (decided only a few days ago) 111 Fed. 876.

4. The court charged the jury that the burden of proof of contributory negligence on the part of the plaintiff was upon the defendant, and this is assigned as error. But the rule as stated by the court is well settled in the courts of the United States. What we have said covers all the assignments of error which seem to be worthy of discussion.

No error being found in the record, the judgment must be affirmed, with costs.