## ATCHISON, T. & S. F. RY. CO. v. PHIPPS.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1903.)

No. 1,914.

1. EVIDENCE—HEARSAY—STATEMENTS.

Testimony giving a statement by the young daughter of the owner of a building destroyed by fire as to the place where the fire started, made two hours after the fire broke out, and in another place, was inadmissible as hearsay.

2. REVIEW ON APPEAL—ORDER OF INTRODUCTION OF TESTIMONY.

The admission in rebuttal of testimony which is properly rebuttal evidence is not error for which the judgment will be reversed, merely because other evidence as to the same matter was introduced in chief; the order of the introduction of evidence being a matter in the legal discretion of the trial court, which discretion, in the absence of gross abuse, is not reviewable by the appellate court.

3. SAME—INSTRUCTIONS.

The refusal of instructions asked is not reversible error, where the rules embodied therein are given in clear language in the charge of the court, which is not excepted to.

4. INSTRUCTIONS—INFERENCE FROM FAILURE TO CALL WITNESSES.

Where persons who had been subpoenaed as witnesses by both parties, and whose depositions had been taken by defendant, were present during the trial, but were not called by either party, the court properly instructed the jury that they should draw such inference from the fact as in their judgment was fair and reasonable, and properly refused to instruct, as asked by defendant, that the jury had a right to infer from the fact that such witnesses were not called by plaintiff that their testimony would not have been favorable to plaintiff.

5. REVIEW ON APPEAL—FORM OF VERDICT—QUESTION NOT RAISED BELOW.

A possible irregularity in the form of the verdict, as where the petition contained two counts, on one of which the jury were instructed to find for defendant, and they returned a general verdict for plaintiff, cannot be first urged in the appellate court as ground for reversal of the judgment, where it does not appear that exception was taken at the proper time in the trial court, or that such court was asked to cause the findings to be stated in the desired form.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Gardiner Lathrop and Ben Eli Guthrie (George A. Mahan, on the brief), for plaintiff in error.

Bert D. Nortoni, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and SHIRAS, District Judge.

¶ 2. See Appeal and Error, vol. 3, Cent. Dig. § 3851.

SHIRAS, District Judge.   From the record in this case it appears that in September, 1901, William R. Phipps was the owner of a dwelling house and store building, and the contents thereof, situated in the town of Ethel, Macon county, in the state of Missouri; the named town being a station upon the line of railroad owned and operated by the plaintiff in error, the Atchison, Topeka & Santa Fé Railway Company; that on the evening of the 10th of September, 1901, a fire destroyed a frame building used as a restaurant and dwelling by J. W. Lechliter, situated about 150 feet north of the water tank of the railway company; that the fire spread from the Lechliter building to those adjacent thereto, and was thus communicated to the buildings owned by Phipps, the store building and contents being destroyed, and the dwelling being damaged.   To recover for the damages resulting from the fire, William R. Phipps brought an action against the railway company, claiming that the fire which destroyed the Lechliter building, and thence spread to his premises, was caused by sparks thrown out by a locomotive engine used by the railway company in the operation of its trains.   At the December term, 1902, of the Circuit Court, the death of William R. Phipps was suggested and the action was revived and continued in the name of Martha B. Phipps, as the administratrix of his estate, and at the same term of court the case was tried before a jury.

In the introduction of the evidence the plaintiff maintained the view that the fire which destroyed the Lechliter building originated from sparks thrown out by engine No. 75, pulling train No. 3, known as the "California Limited," which stopped at the water tank within a few minutes of the discovery of the fire; there being evidence tending to show that the engine emitted a large quantity of sparks, which were carried in the direction of, and upon the roof of, the Lechliter building.   On behalf of the railway company it was maintained that the fire was communicated to the building from a defective flue therein which received the pipe from a stove used in the restaurant.

As the statute of Missouri (section 1111, Rev. St. 1899) declares that "each railroad corporation owning or operating a railroad in this state shall be responsible in damages to every person and corporation whose property may be injured or destroyed by fire communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation," the question of the liability of the railway company was narrowed down to the proposition whether it was shown that the fire which destroyed the Lechliter building originated from sparks thrown out from an engine used by the railway company in the operation of its trains, as, under the provisions of the statute, liability for fires communicated directly or indirectly from the engines used in the operation of the railway is imposed upon the company.   Upon this issue, the jury found for the plaintiff below, and, judgment having been entered upon the verdict, the railway company brings the case to this court by writ of error; it being stated in the brief of counsel for the railway company that "the questions involved upon this writ of error are the exclusion of certain evidence offered by the defendant (plaintiff in error herein), the admission of certain evidence in rebuttal offered by plaintiff (defendant in

error herein), which was part of her case in chief, and the refusal of certain instructions asked by the defendant."

It is further stated in the brief of counsel that "the first error relied upon is that the Circuit Court erred in excluding the evidence of what one of the daughters of J. W. Lechliter stated in the presence of witness H. C. Phillips, who was defendant's assistant superintendent, at defendant's depot, about quarter to twelve on the night of the fire, as to where the fire occurred." Upon the face of the record, it is shown that the witness H. C. Phillips was asked by counsel for the railway company to state what was said by one of the young daughters of J. W. Lechliter as to where the fire occurred; the statement called for having been made at about a quarter to 12 of the night of the fire, and two hours after the breaking out of the same, when the young girl was in a small room adjacent to the ticket office in the station of the railway. Upon objection the court did not permit the question to be answered by the witness, and an exception was duly noted to the ruling of the court. It is questionable whether, upon the record, the materiality of the evidence sought to be introduced is shown with sufficient clearness to require the court to consider this phase of the error assigned, due to the fact that the bill of exceptions does not show the substance of the offered testimony. To constitute reversible error in the rejection of evidence, it must be made to appear that the evidence offered and excluded was competent, and of such materiality and weight that its exclusion might have caused injury to the party offering the same. Packet Company v. Clough, 20 Wall. 528, 22 L. Ed. 406; Railroad Company v. Smith, 21 Wall. 255, 22 L. Ed. 513; Thompson v. First National Bank, 111 U. S. 529, 4 Sup. Ct. 689, 28 L. Ed. 507; Shauer v. Alterton, 151 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286; Buckstaff v. Russell, 151 U. S. 626, 14 Sup. Ct. 448, 38 L. Ed. 292; Origet v. Hedden, 155 U. S. 228, 15 Sup. Ct. 92, 39 L. Ed. 130. The three cases last cited declare the rule to be, in cases where the witness testifies upon the trial, that if the question excluded is of such form as to show clearly that the testimony sought to be elicited would be competent, and might be favorable to the party offering the same, it is not necessary to recite in the bill of exceptions the substance of the expected answer. Doubtless counsel deemed the question excluded in this case to be within this rule, and therefore did not make an offer to show what the substance of the excluded evidence was; but we are not called upon to pass upon the correctness of this view, for the reason that the action of the trial court in excluding, as hearsay, the statement sought to be introduced, is fully sustained by the ruling of this court in National Masonic Association v. Shryock, 73 Fed. 774, 20 C. C. A. 3, wherein the question at issue is very fully and clearly considered.

The second error assigned is that "the Circuit Court erred in permitting plaintiff's witness Miss Lea Heaton to testify in rebuttal as to whether the Lechliter cook stove was hot or cold on the night of the fire; plaintiff having gone into that question as part of her case in chief, and because the same was part of her case in chief." The case of the plaintiff was based upon the allegation that the fire originated from sparks thrown out from an engine operated by the rail-

way company, whereas the defendant sought to maintain the proposition that the fire came from the stove used in the building. Evidence that at the time the fire broke out the stove was cold would more properly be in rebuttal of the defense relied on by the defendant than in support of the case maintained by the plaintiff, and, as it was evidence properly in rebuttal of that introduced by the defendant company, it cannot be said that its admission was error, simply because some evidence upon the particular matter had been given by a witness called by the plaintiff in making out her case in chief. The order in which testimony otherwise competent and material may be introduced is a matter very largely within the control of the trial court, and prejudicial error in its action must be made clearly apparent before an appellate court is justified in predicating error thereon. Thus, in Goldsby v. United States, 160 U. S. 70, 74, 16 Sup. Ct. 218, 40 L. Ed. 343, it is said:

"This testimony was objected to on the ground that the proof was not proper rebuttal. The court ruled that it was, and allowed the witness to testify. It was obviously rebuttal testimony. However, if it should have been more properly introduced in the opening, it was purely within the sound judicial discretion of the trial court to allow it, which discretion, in the absence of gross abuse, is not reviewable here. Wood v. United States, 16 Pet. 342, 361 [10 L. Ed. 987]; Johnston v. Jones, 1 Black, 209, 227 [17 L. Ed. 117]; Commonwealth v. Moulton, 4 Gray, 39; Commonwealth v. Dam, 107 Mass. 210; Commonwealth v. Meaney, 151 Mass. 55 [23 N. E. 730]; Gaines v. Commonwealth, 50 Pa. 319; Leighton v. People, 88 N. Y. 117; People v. Wilson, 55 Mich. 506, 515 [21 N. W. 905]; Webb v. State, 29 Ohio St. 351; Wharton's Criminal Pleading & Practice, § 566; 1 Thompson on Trials, § 346, and authorities there cited."

It is also assigned as ground for reversal that the court did not give to the jury an instruction asked by the defendant company in the words following:

"If, after considering all of the testimony, facts, and circumstances in evidence, the minds of the jury are left in a state of supposition as to the origin of the fire, the verdict must be for the defendant."

It would seem that the words "in a state of supposition" were not well chosen to express the thought that was probably intended by counsel, for it is very probable, if the court had given this instruction, the jury would have inferred therefrom that, if there was any doubt in their minds as to the origin of the fire, their verdict must be for the defendant. To enable the plaintiff to recover a verdict, it was not incumbent on her to prove beyond all doubt, or even beyond all reasonable doubt, that the fire was caused by sparks emanating from an engine operated by the defendant company. The court, in its charge to the jury, clearly and repeatedly instructed them that, to enable the plaintiff to recover, she must prove by a fair preponderance of the evidence, and to the reasonable satisfaction of the jury, that the fire was started by sparks thrown out by locomotive engine No. 75, operated by the defendant company, and further that "if, from all the facts and circumstances in evidence, the jury are in such doubt as to be unable to find the real cause or origin of the fire, then they should find for the defendant." No exceptions were taken by defendant to the charge given by the court to the jury, and as the rule upon the amount of

proof needed to maintain plaintiff's case was clearly given to the jury, in terms not excepted to by defendant, it cannot be held that it was error to refuse the instruction asked for.

It is further contended that reversible error was committed in the refusal of the court to give an instruction asked by the defendant in the terms following:

"By not calling any of the Lechliter family, in whose building the fire originated, as witnesses as to the origin of the fire, the jury have a right to infer that their evidence would not be favorable to plaintiff."

In support of this assignment of error, counsel for the railway company cite many cases wherein, under varying circumstances, the rule is recognized that where it is within the power of a party to produce competent and material evidence upon a question at issue, which it is not equally open to the other party to introduce, a failure to adduce the same gives rise to the inference that the evidence would be adverse to the party failing to introduce the same. In the consideration of this question, regard must be paid to the circumstances under which the request was made to the court. It is not claimed that the Lechliter family were relatives of the plaintiff, or that they were in the employ of the plaintiff, or in any other manner subject to her influence or control. The record shows that the members of the Lechliter family were present in the court during the trial, having been subpœnaed to attend the trial by both the plaintiff and the defendant. It further appears that the railway company had caused the testimony of the members of the family to be taken by deposition, and these depositions were under the control of the defendant railway company. It also appears that the railway company was permitted to put in evidence the declaration of J. W. Lechliter, the head of the family, made shortly after the fire, in the presence of H. C. Phillips, the assistant superintendent of the railway company, who testified that:

"I went up the street to see if I could find from the people how the fire came to start, and out in front of the buildings nearest the track there was a small group of people, and among others this man who kept the lunchroom, and he was crying. I don't think he had a hat, and he was in his shirt sleeves, as I recollect it. Somebody asked him how it started. He just said: 'I don't know. It is all I had in the world, and just these few cans is left.' That, of course, gave me no information to go on, and later in the evening, when I found that the fire started in this building, I tried to get from some of the family an idea of just how it started. The only statement I could get from any of them, without the direct question, which I didn't care to undertake with them (they were all very much rattled), was when I was standing in the ticket office that night."

It thus appears that the superintendent of the railway company, acting in its behalf, immediately after the fire happened, and undoubtedly before any communication could have taken place between the plaintiff and the members of the Lechliter family, had the opportunity to ascertain what knowledge they had of the origin of the fire; that subsequently, in preparing this case for trial, the railway company took the testimony of the Lechliter family by deposition; that when the case was set for trial the railway company subpœnaed these parties as witnesses on its behalf, and during the trial they were present in

the courtroom, subject to the call of either of the litigants. Under these circumstances the court, instead of giving the instruction asked for by the company, charged the jury as follows:

"You are asked by counsel, in their argument, to draw certain inferences from the fact that one side or the other did not call certain available witnesses to prove certain relevant facts. As already stated by me, you are at liberty to, and should consider such fact, and give to it such reasonable weight and importance, and draw such reasonable inference therefrom, as, in your judgment, it is fairly entitled to. Your attention is also called to other facts of the case, and you are asked to draw certain inferences therefrom, and counsel have asked the court to instruct you that certain inferences should be drawn therefrom. The court, however, is disinclined, except as already stated, to express its views as to what inferences of fact should be drawn from any of the established facts of the case. You are men of experience, and have heard all the evidence, and are fully competent to, and should, draw such inferences as seem to you fair and reasonable from any of the established facts in the case."

In effect, the attention of the jury was directed to the fact that these parties were not called as witnesses, and the jury was instructed that they should consider that fact, and give to it such weight and draw such reasonable inference therefrom as, in their judgment, it was fairly entitled to. The argument of counsel for the railway company, able as it is, has failed to satisfy us that the court erred in refusing the requested instruction, in view of the somewhat peculiar facts out of which the question arose. As already stated, the record shows that the railway company had caused the testimony of the members of the Lechliter family to be taken by deposition, and had subpœnaed them to be in attendance at the trial; and it might very well be that the counsel for plaintiff presumed that they would be called by the defendant, and therefore did not call them. With full knowledge on part of the railway company of the character of their testimony, and with full opportunity to put these parties on the stand as witnesses, the company did not do so. Is it not the fair inference that the company did not call them because it knew that their testimony would not aid the case of the company, and, under these circumstances, was the company entitled to the instruction asked, to the effect that the jury must draw the inference that their testimony would be adverse to the plaintiff's case, or was not the situation fairly met by the court submitting the question to the jury for their consideration in the terms of the charge given? Furthermore, in dealing with many questions that arise in the course of jury trials, it is frequently impossible for an appellate court to know just how the question was presented to the jury in the argument of counsel; and yet it is with reference to this presentation that the trial court should frame its instruction upon the matter at issue, and due weight must be given to this consideration, when exception is taken to the form in which a given point is submitted to the jury. As already stated, we are not satisfied that the company has any just cause for complaint with respect to the manner in which the attention of the jury was directed to the fact that the members of the Lechliter family were not called as witnesses, and the assignments of error based upon the ruling of the court in this particular are therefore not sustained.

Error is also assigned, based upon the failure of the court to give several instructions asked by the defendant company, in which the attention of the jury was called to certain specific matters appearing in the evidence. The pivotal point in this case was the question whether the fire which burned the Lechliter building was caused by sparks thrown out by an engine operated by the defendant company. This question, with the rules of law applicable thereto, was very clearly submitted to the jury in the charge of the court, and in terms not excepted to by the defendant, and reversible error cannot be predicated on the fact that the court did not give certain instructions in the form asked by counsel, even though these instructions may be correct in form and substance. We have carefully considered each of the errors thus assigned, but fail to find ground for holding that the failure to give the same worked prejudice to the defendant, and the assignments are therefore overruled without further elaboration of our views thereon.

It is finally contended that the judgment and verdict in this case are so irregular and erroneous that the same must be set aside, because the same are general in form, whereas the petition or declaration contained two distinct counts; it being claimed that in such cases the verdict should show the finding of the jury on each cause of action declared on. It is true that the petition, in form, contains two counts, the one seeking to recover damages for the destruction and injury to the buildings and their contents, and the other for the damage to the realty, in that it was claimed the fire had destroyed a number of shade trees, thus lessening the value of the realty. The petition shows, however, that the cause of action declared on in each count is one and the same—the escape of sparks from one of defendant's engines, which set fire to the Lechliter building, and thence spread to the premises owned by William R. Phipps. The situation, therefore, is not as it would be in a case wherein a plaintiff declares upon two distinct causes of action, with respect to which the jury might find for the plaintiff on one cause of action, and against him on the other. In such cases there exists good reason for requiring a finding in the verdict on each cause of action. In the case now before us there was but one cause of action declared on, and the court, in its charge, instructed the jury that there was no evidence to sustain the allegation of injury to the shade trees, and that upon the second count the verdict must be for the defendant. All, therefore, that was submitted to the determination of the jury upon the question of the amount of damages, was covered by the first count; the second having been withdrawn from their consideration. There is nothing shown in the record which in the slightest degree tends to support the idea that the jury disregarded the instruction of the court not to award damages for the injury to the realty claimed to have resulted from the alleged destruction of the shade trees. If, according to the contention of counsel for the railway company, the jury had found for the plaintiff on the first count in the petition, and for the defendant on the second count, the claim could have been well made that the verdicts were inconsistent, because the findings were adverse as to the one cause of action declared on in the two counts. If counsel

had deemed it essential that the verdict should show on its face that no damages were awarded under the second count, such a finding could have been secured on the coming in of the verdict. A possible irregularity of the kind suggested in this case cannot be first brought up in an appellate court and be successfully urged as ground for the granting a new trial; it not appearing that exception was taken at the proper time in the trial court, or that the trial court was asked to cause judgment to be entered in the desired form. National Bank v. Butler, 129 U. S. 223–232, 9 Sup. Ct. 281, 32 L. Ed. 682.

Finding no substantial merit in the several errors assigned, the same are overruled, and the judgment of the Circuit Court is affirmed.