# OWL CREEK COAL CO. v. GOLEB.

(Circuit Court of Appeals, Eighth Circuit.  January 5, 1914.)

No. 3937.

**1.** MASTER AND SERVANT (§ 103*)—STATUTES—CONSTRUCTION—EMPLOYMENT OF MINING BOSS—DUTY OF MASTER.

A Wyoming statute regulating mines and providing that a mining boss or foreman shall be licensed by the mining department of the state, and charging him with certain duties of inspection prescribed by law, does not relieve an operator, who is employed by the boss or foreman, of the duty to use reasonable care to provide a safe place in which the miners may perform their duties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

**2.** PLEADING (§ 258*)—ANSWER—DEFENSES—AMENDMENT.

Where pleas of assumed risk and contributory negligence, in an action for injuries to a servant, were not attacked by special demurrer or appropriate motion before trial, but only by oral demurrers during the trial, they being entitled under state laws to liberal construction with a view to substantial justice between the parties, it was error, if they were insufficient, to refuse to permit their amendment.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 765–782; Dec. Dig. § 258.*]

**3.** MASTER AND SERVANT (§ 262*)—ANSWER—DEFENSES.

Pleas of assumed risk and contributory negligence, in an action for injuries to a servant, were not destroyed because coupled with a denial of negligence; such defense being tendered by general denial.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 855–859; Dec. Dig. § 262.*]

**4.** MASTER AND SERVANT (§ 262*)—INJURIES TO SERVANT—ASSUMED RISK—PLEADING.

Where assumed risk is incident to a servant's contract of employment and arises out of it, it need not be specially pleaded, in order to be available as a defense in an action for injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 855–859; Dec. Dig. § 262.*]

**5.** MASTER AND SERVANT (§§ 206, 217, 226*)—INJURIES TO SERVANT—ASSUMED RISK.

A servant, by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the service which he knows and appreciates, including those incident to the employment contemplated in the contract of hiring, and those which arise from the master's failure fully to discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances.  He is not, however, required to make an investigation or inspection to ascertain whether or not the master's duty has been performed, but only to have due regard for what he actually knows, and for what is so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 550, 574–600, 659–667; Dec. Dig. §§ 206, 217, 226.*]

**6.** MASTER AND SERVANT (§ 235*)—INJURIES TO SERVANT—SAFE PLACE—INSPECTION—DELEGATION OF DUTY.

While it is the duty of a master to provide a reasonably safe place, and he is liable for negligent performance of such duty, whether he undertakes that performance personally or delegates it to another, it is nevertheless competent for the master to impose and the servant to ac-

cept, by contract or mutual understanding, the burden of inspecting or examining the appliances or places he is required to use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

7. MASTER AND SERVANT (§ 235*)—INJURIES TO SERVANT—APPLIANCES—PLACES TO WORK—INSPECTION.

Where it was a servant's duty by the terms of his employment, or by reason of the nature of the work, to inspect, or to inspect and keep in order, the machinery, appliances, or places to work, he could not recover for injuries because of defects which it was his duty to remedy, and, if he assumed the duty of removing a known danger, he was guilty of contributory negligence if he failed to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

8. MASTER AND SERVANT (§§ 213, 238*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.

Where the work in which a servant is engaged is dangerous in itself, or where he knows that the method of work adopted involves danger, he is bound to exercise ordinary care to avoid injury therefrom and assumes the usual risks incident thereto.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 559–564, 681, 743–748; Dec. Dig. §§ 213, 238.*]

9. MASTER AND SERVANT (§ 262*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—PLEADING.

Where plaintiff's evidence, in an action for injuries to a servant, discloses that he himself is guilty of contributory negligence, defendant may take advantage of such defense without specially pleading it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 855–859; Dec. Dig. § 262.*]

10. NEGLIGENCE (§ 124*)—EVIDENCE—CUSTOM.

On the issue of negligence and the performance or omission of an act, evidence of the ordinary practice or usual custom, if any, of ordinarily prudent and intelligent persons, in the performance under the same or like circumstances of the same or like acts, is competent.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 235–238; Dec. Dig. § 124.*]

11. MASTER AND SERVANT (§ 274*)—INJURIES TO SERVANT—COAL MINERS.

Where, in an action for injuries to the operator of a coal cutting machine in the mine by certain loosened material falling on him after he began using his machine before the place had been made safe after blasting operations, defendant claimed that it was part of plaintiff's duty to assist in cleaning the stope of loosened coal and to make the place safe, evidence as to the nature of plaintiff's employment, what duties were required by and were incident to it, what plaintiff knew and appreciated, whether from his own experience, prevailing usages, or warnings of others, was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

12. APPEAL AND ERROR (§ 1056*)—RULINGS ON EVIDENCE—PRESENTATION OF ERROR.

Where it clearly appears from the record on a writ of error that evidence offered and excluded was competent and of such materiality and weight that its exclusion might have caused injury to the party offering it, nothing further or more formal is required to show reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**13.** MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—ASSUMED RISK—INSTRUCTION.

In an action for injuries to a coal miner, an instruction that plaintiff would be bound to notice such dangers as were obvious, and which could have been readily seen by the exercise of ordinary care, did not constitute a charge that plaintiff assumed the risk of such dangers as inhered in the very nature of the employment against which defendant claimed it was plaintiff's duty to provide, and the existence of which he might have been presumed to know and appreciate.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**14.** MASTER AND SERVANT (§ 103*)—INJURIES TO SERVANT—SAFE PLACE—DUTY OF SERVANT.

Evidence that it was the duty of the operator of a coal cutting machine in a mine after a blast to assist in clearing up the coal and taking down such as had been loosened about the place where he was to continue his work did not show an attempted unlawful delegation of the master's duty to use reasonable care to provide a safe place, but involved only the right of the master to impose and the servant to accept by contract or by mutual understanding the burden of making such inspection or examination of the place he was required to use and such as he was competent to make.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by Peter Goleb against the Owl Creek Coal Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Plaintiff in error, hereinafter called defendant, is a South Dakota corporation engaged in operating a coal mine at Gebo, in the state of Wyoming. Defendant in error, hereinafter referred to as plaintiff, was an employé of said defendant, and brought suit to recover damages for personal injuries sustained while operating a machine undercutting coal in defendant's mine. The injury occurred on the morning of January 4, 1912. The plaintiff was what is known as a machine runner, working by the day. He was 28 years old, and had had seven years' experience in coal mining. During the evening of January 3d, the plaintiff with his machine undercut a wall of coal at a certain manhole or crosscut in the mine, completing this work at midnight. After him came employés known as shooters, who drilled holes at various points in the ledge thus undercut, which holes were charged with explosives and the same discharged, bringing down many tons of coal upon the floor and against the wall of the mine at the point referred to. The next morning at 7 o'clock plaintiff returned to the mine. He found the bottom of the slope where he had worked the night before full of unloaded coal. Half an hour later Kirby, the pit boss, appeared and told plaintiff that he desired him that day to continue cutting at the manhole. Plaintiff replied that he could not cut there because the place was full of coal. He states that after inspection the pit boss told him "to get two loaders and tell them to go and make room for one board, and also my helper should help, and as soon 'as they make room for your board, then you go and start to cut.'" The board referred to is one upon which the cutting machine rests when in operation. About 16 or 17 car loads of coal were lying displaced upon the floor and against the walls of the slope at this point. Plaintiff states that he himself took no part in clearing the place of coal; that in about an hour he and his helper adjusted the board, and the pit boss, Kirby, having returned, as-

FEDERAL REPORTER

sisted them to place the machine upon it and directed plaintiff to begin cutting; that in obedience to this direction he started his machine, which delivers a blow of between 700 and 800 pounds. About 15 minutes afterwards a mass of coal fell upon him, resulting in the injuries complained of.

The pit boss, Kirby, states that plaintiff was working by the day and was required to perform about the mine any work that the foreman asked him to do, which included shoveling, drilling holes, picking down coal that had been loosened by blasts, or anything of that kind. On the morning in question he testifies that he told plaintiff "to send his helper down to the bottom of the slope and for him to help the shooter shoot down some coal and get this place ready to cut. * * *. Q. What was it you told him? A. I told him to help the shooter and for them to get that place ready. Q. Who was the helper you referred to? A. Drago Yonich, a Montenegrin. Q. Who were the loaders you spoke of? A. Nick Siemes and Tommy Siemes. Q. What followed that conversation? A. I left. Q. Where did you go? A. I went to another part of the mine. Q. Do you know whether or not he carried out your instructions? A. I believe he did, started to. Q. Did you see him again later that morning? A. After he was hurt I did." He testifies further that at the time the place was lying full of coal; that coal was lying against the face as if it had just been shot down, and was also hanging on the face of the wall. It had been broken up, but was largely in place and extended pretty well up toward the top. In the ordinary course of mining it was necessary to take a pick, pull down the loose coal, and load it out.

The petition charged defendant with negligently permitting the place where plaintiff was working to become unsafe and dangerous. In other words, the cause of action is based upon the alleged failure of the master to exercise reasonable care to provide a reasonably safe place for work. The answer interposed a general denial and then set out four specific affirmative defenses. These are quoted in full:

"Defendant denies that it was negligent as alleged in the amended petition or at all, and alleges that each and all of the conditions, risks, and dangers in and about defendant's mine, and in and about the place where plaintiff was at and before the time of said alleged accident and injury to plaintiff, if any, including the conditions, risks, and danger resulting in said accident and injury, were open and obvious and readily observable to the plaintiff; that each and all of the said conditions, risks, and dangers were known to the plaintiff or should have been known to him in the exercise of ordinary care, and that, notwithstanding said knowledge and means of knowledge on the part of plaintiff as aforesaid, the plaintiff continued in said employment, and went into said place prior to said accident and remained in said place until the happening of said accident and injury; that each and all of said conditions, risks, and dangers, except in so far as they were caused by the negligence of the plaintiff himself, were incident to the work plaintiff was employed to do; and that the plaintiff assumed each and all of said conditions, risks, and dangers."

"And for a second, further, and affirmative defense to said amended petition defendant alleges: Defendant denies that it was negligent as alleged in the amended petition or at all, and alleges that the accident and injury to the plaintiff were proximately caused by negligence, omissions, and want of care and caution on the part of the plaintiff himself."

"And for a third, further, and affirmative defense to said amended petition defendant alleges: Defendant denies that it was negligent as alleged in the amended petition or at all, and alleges that the accident and injury to the plaintiff were contributed to by negligence, omissions, and want of care and caution on the part of the plaintiff himself."

"And for a fourth, further, and affirmative defense to said amended petition defendant alleges: Defendant denies that it was negligent as alleged in said amended petition or at all, and alleges that, if the accident and injury to the plaintiff alleged therein were caused by any negligence other than the negligence of plaintiff himself, such negligence was negligence on the part of a fellow servant or fellow servants of the plaintiff, for which the defendant is not in law responsible in damages to the plaintiff."

At the trial defendant offered testimony in support of these defenses to

the effect that it was a part of the duty of the plaintiff, as a machine runner, to look after the roof and walls of the place at which his machine was to be operated, and particularly so soon after blasting had taken place; that it was a part of plaintiff's business, in conjunction with other employés, to clean the place, which included removing loose coal and picking and pulling down that which had been shattered and was hanging and threatening to fall; that this duty not only inhered in the contract of employment, and the directions given in the instant case, but was also a well-known custom and practice in mining; that plaintiff knew the condition of the place, since he himself had taken part the night before in preparing for the blast; that the situation was obvious to any one making even a casual inspection; that other employés had warned plaintiff of the dangerous condition, advising him to test the walls carefully with his pick; that plaintiff, after the accident, admitted having done so on this occasion; and that he did so in many instances. There was also testimony to the effect that such work was the obvious duty of miners and machine runners, particularly when the place bore unmistakable evidences of being unsafe. Much testimony of this nature, which need not be considered in detail, was tendered; practically all of it was ruled out by the trial judge, who proceeded upon the theory that the obligation of the defendant to provide a reasonably safe place in which plaintiff might work excluded the defenses of contributory negligence and assumption of risk; also that the affirmative defenses were not sufficiently pleaded, even though such defenses might otherwise be entertained. Defendant's offer to amend its pleadings was refused, and its defense was limited to that tendered by its general denial.

At the close of the testimony defendant requested a number of instructions, which, in general, submitted to the consideration of the jury the questions raised by the affirmative defenses pleaded and the offers of evidence to which reference has been made. These requests were likewise refused. The charge of the court was very brief. All that conditioned the right of recovery is embraced within the following language: "In cases like this it is the duty of the employer, or master, to use ordinary care to furnish reasonably safe machinery and instrumentalities with which his servants may perform their work and a reasonably safe place in which they may render their service, and this duty may not be so delegated by the employer, or master, that he, or it, may escape liability for its breach. So in this case it was the duty of the defendant company to use ordinary care to provide a reasonably safe working place within which the plaintiff might operate his machine. The limit of the defendant's duty in this respect is to exercise ordinary care, having regard for the hazards of the service, to provide the plaintiff with a reasonably safe working place, and whether it exercised this reasonable care you are to determine from the evidence. Even under the pleadings as submitted to you (that is, upon the amended complaint and the general denial in the answer), the plaintiff would be bound to take notice of such dangers as were obvious and could and would have been readily seen by the exercise of ordinary care for his own safety, and if he failed in this respect he cannot recover."

The jury returned a verdict assessing plaintiff's damages in the sum of $21,000.

William E. Hutton, of Denver, Colo. (Bruce B. McCay, of Denver, Colo., on the brief), for plaintiff in error.

E. E. Enterline, of Sheridan, Wyo. (Enterline & La Fleiche, of Sheridan, Wyo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge (after stating the facts as above). [1] With respect to the fourth affirmative defense, that the

negligence, if any, which occasioned the injury was that of a fellow servant or fellow servants of the plaintiff, the ruling of the trial court is approved. Kirby was the only representative of the defendant corporation upon whom devolved the duties imposed by law upon the master. It is further urged that the Wyoming coal mining statute provides that a mining boss or foreman shall be licensed by the mining department of the state of Wyoming, who in that capacity is charged with certain duties of inspection prescribed by law; that the operator of a coal mine fulfills the measure of his duty to his employés if he commits his work to licensed superintendents, and is not, in any event, responsible for their acts or omissions in carrying out or failing to carry out the provisions of the statutes of the state of Wyoming. We think it unwarranted to place upon this statute, obviously intended to insure a greater degree of safety to mining employés, a construction that would in effect withdraw from them the protection of that reasonable care which the law imposes upon the master.

[2] The first, second, and third affirmative defenses were improperly excluded. Whether they completely satisfied all requirements for pleading assumption of risk and contributory negligence need not be decided. Under the statutes of Wyoming they were entitled to a liberal construction, "with a view to substantial justice between the parties" (Travelers' Ins. Co. v. Great Lakes Engineering Works Co. [C. C. A.] 184 Fed. 426, 107 C. C. A. 20, 36 L. R. A. [N. S.] 60); they were not attacked by special demurrer or appropriate motion before the trial (Kirkpatrick v. St. Louis & S. F. R. Co. [C. C. A.] 159 Fed. 855–860, 87 C. C. A. 35).

[3] Plaintiff interposed oral demurrers during the progress of the trial. If the pleas were in themselves insufficient, which we do not concede, the same sound discretion which entertained this dilatory attack should likewise have permitted, upon appropriate terms, the amendment offered; nor can we agree that the pleas were self-destroying because coupled with the denial of negligence on the part of defendant. That positive defense was obviously tendered by the general denial. In such case, its formal reiteration later should not operate to bar affirmative defenses tendered in good faith under a code framed with a view to substantial justice between litigants.

[4] Furthermore, it is conceded in the briefs that, where the assumption of risk is incident to the employment and arises out of the contract of hiring, it need not be specially pleaded. In Chicago, Burlington & Quincy Railroad Co. v. Shalstrom, 195 Fed. 725, 115 C. C. A. 515, this court said:

"The agreement of a servant to assume the ordinary risks of his employment and the extraordinary risks thereof that are known * * * inheres in and is an inextricable part of his contract of employment, and, when the latter is proved or admitted, the assumption of these risks is proved, and no pleading or proof on the part of the defendant is necessary to establish it."

There can be no doubt that the duty of exercising reasonable care to provide a reasonably safe place to work, as applied to the particular nature of the work in hand, devolves in all cases upon the master; but it is equally true that the servant may and does assume certain risks,

and may be bound, in proper degree, by his own negligence contributing to the injury.

[5] This court has repeatedly held that a servant by entering or continuing in the employment of a master, without complaint, assumes the risks and dangers of the service which he knows and appreciates, including those which are incident to the employment and are contemplated in the contract of hiring, and those which arise from the failure of a master fully to discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances to use. United States Smelting Co. v. Parry (C. C. A.) 166 Fed. 407, 92 C. C. A. 159; Chicago, B. & Q. R. Co. v. Shalstrom (C. C. A.) 195 Fed. 725, 115 C. C. A. 515; Glenmont Lumber Co. v. Roy (C. C. A.) 126 Fed. 524, 61 C. C. A. 506; St. Louis Cordage Co. v. Miller (C. C. A.) 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551; Burke v. Union Coal & Coke Co. (C. C. A.) 157 Fed. 178, 84 C. C. A. 626; Lake v. Shenango Furnace Co. (C. C. A.) 160 Fed. 887, 88 C. C. A. 69; Maki v. Union Pac. Coal Co. (C. C. A.) 187 Fed. 389, 109 C. C. A. 221; Browne v. King (C. C. A.) 100 Fed. 561, 40 C. C. A. 545; Mississippi River Logging Co. v. Schneider (C. C. A.) 74 Fed. 195, 20 C. C. A. 390; Choctaw, O., etc., R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96.

In United States Smelting Co. v. Parry, supra, the rule is thus comprehensively stated:

"It is the duty of a master to exercise reasonable care to provide a reasonably safe working place for his servant, and the latter is entitled to act upon the assumption that that duty has been performed, unless the contrary be known to him, or be so patent as to be readily observed by him. He is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience."

[6] Thus the duty of the master to provide a reasonably safe place is a positive obligation resting upon him, and he is liable for the negligent performance of such duty, whether he undertakes that performance personally or delegates it to another. Nevertheless, it is competent for the master to impose and for the servant to accept, by contract or mutual understanding, the burden of inspection or examination of the appliances or places he is required to use, such as he is competent to make. 26 Cyc. 1104–1106, and cases cited.

[7] Where it is the servant's duty, by the terms of his employment, or by reason of the nature of the work, to inspect, or to inspect and keep in order, the machinery, appliances, or places for work, he cannot recover for injuries caused by defects which it was his duty to remedy; and, where a servant assumes the duty of removing a known danger, he is guilty of contributory negligence if he fails to do so. 26 Cyc. 1252–1255; Baltimore & O. R. Co. v. Burris (C. C. A.) 111 Fed. 882, 50 C. C. A. 48.

[8] Where the work in which a servant is engaged is in itself dangerous, or where the servant knows that the method of work adopted involves danger, he is bound to exercise ordinary care to avoid injury

therefrom; accordingly a servant assumes the ordinary and usual risks incident to his employment, such as mining or excavating, the existence of which are known to him. Choctaw, O. & G. R. Co. v. Holloway (C. C. A.) 114 Fed. 458, 52 C. C. A. 260. In Baltimore & O. R. Co. v. Burris, supra, the Circuit Court of Appeals for the Sixth Circuit held that the question of whether, under the circumstances, the servant assumed the risk or suffered from his own failure to provide against danger was properly for the jury and not to be declared as matter of law. In view of the primary duty of the master to exercise reasonable care to provide a reasonably safe working place for his servant, where it is claimed that the burden of inspection or examination of the appliances or places to work has been imposed upon the servant, it must satisfactorily appear that this was done by contract or mutual understanding, or inhered in the very nature of the employment and of the work which the servant undertook to perform.

[9] It is, of course, conceded that, where the plaintiff's evidence discloses that he was guilty of contributory negligence, the defendant has a right to take advantage of such defense without specially pleading the same. Chicago, B. & Q. Ry. Co. v. Cook, 18 Wyo. 43–48, 102 Pac. 657; Chicago, G. W. Ry. Co. v. Price (C. C. A.) 97 Fed. 423–430, 38 C. C. A. 239; Lake v. Shenango Furnace Co. (C. C. A.) 160 Fed. 887, 88 C. C. A. 69.

[10] It is equally well settled that, upon the issue of negligence in the performance or omission of an act, evidence of the ordinary practice and the usual custom, if any, of ordinarily prudent and intelligent persons in the performance, under the same or like circumstances, of the same, or like acts, is competent. Lake v. Shenango Furnace Co., supra; Canadian Northern Ry. Co. v. Senske (C. C. A.) 201 Fed. 637, 120 C. C. A. 65; Mississippi River Logging Co. v. Schneider (C. C. A.) 74 Fed. 195, 20 C. C. A. 390.

In the case at bar, from the testimony of the plaintiff, of Kirby, the pit boss, and of the witness Morgan, the secretary-treasurer of the Miners' Organization, an issue of fact was raised, which, under the foregoing principles, should have been submitted to the jury, whether, either as an incident of his employment or by virtue of the orders issued to him, it was or was not the duty of the plaintiff, in conjunction with others, to clean and make safe the place in which he was to work, and whether, if he proceeded with his work before the proper conditions of safety were established, he did not assume the risks involved, and was not at the same time guilty of contributory negligence.

[11] All evidence which would bear upon the question of the nature of plaintiff's employment, what inhered in it and was incident to it, what plaintiff himself knew and appreciated, whether from his own experience, prevailing usages, or the warnings of others, was competent. Much evidence of this nature was tendered by the defendant and rejected by the court.

[12] Where it clearly appears from the record that the evidence offered and excluded was competent and of such materiality and weight that its exclusion might have caused injury to the party offering the same, nothing further or more formal is required. Atchison, T. & S. F.

Ry. Co. v. Phipps (C. C. A.) 125 Fed. 478–480, 60 C. C. A. 314; Briggs v. Chicago & N. W. Ry. Co. (C. C. A.) 125 Fed. 745, 60 C. C. A. 513. By instructions, requested and refused, the court was asked to submit the substance of these questions for the consideration of the jury.

[13] The charge, as given, did not cover fully the issues thus tendered. It is true the jury was told that plaintiff would be bound to take notice of such dangers as were obvious and could and would have been readily seen by the exercise of ordinary care, but this does not include such as inhered in the very nature of the employment, against which defendant claimed it was plaintiff's duty to provide, and the existence of which he might well have been presumed to know and appreciate. He himself but a few hours previously had prepared the place for blasting. In the morning he found it in the condition to be expected. It had not been cleared of the coal that had been shattered and loosened, some of which was still hanging and ready to fall. This was the usual condition at this stage of coal-mining operations.

[14] There was ample evidence tendered to the effect that in such cases it was a part of plaintiff's duty to clear and make safe, from such incidental dangers, the place in which he was to work; and it was the testimony of defendant's foreman that such were the orders issued to him. This does not amount to a delegation of the duty of the master in the sense in which such delegation of duty is prohibited. It involves the right of the master "to impose and for the servant to accept, by contract or mutual understanding, the burden of inspection or examination of the appliances or places he is required to use, such as he is competent to make." Notwithstanding his complete familiarity with such situations, and his full knowledge and appreciation of the dangers which attend such operations, his own testimony discloses that he went to work without looking about and without making any examination or test of roof or walls. Under such circumstances, it might well be held that he assumed the risks there present and contributed to his injury by his own negligence; at least such matters should have been considered by the jury under appropriate instructions.

Because, in our opinion, defendant was denied a full and complete presentation and submission of its defenses, the judgment below is reversed, and the case remanded, with directions that a new trial be granted.

HOOK, Circuit Judge, concurs in the result.