### HANNETT v. VICTOR–AMERICAN FUEL CO.

(Circuit Court of Appeals, Eighth Circuit. October 5, 1916.)

No. 4703.

1. MASTER AND SERVANT ⊗⇒219(2)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant, by entering or continuing in the employment of the master without complaint, assumes the risks and dangers of the service which he knows and appreciates, including those incident to the employment and contemplated in the contract of hiring, and those arising from the failure of the master to discharge his duty to exercise ordinary care to furnish a reasonably safe place of work and appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 611; Dec. Dig. ⊗⇒219(2).]

2. MASTER AND SERVANT ⊗⇒217(7)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

While a servant is not required to investigate to ascertain whether the duty of the master has been performed, he is charged with notice of those risks which are so patent as to be readily observed by him by the reasonable use of his senses.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 581; Dec. Dig. ⊗⇒217(7).]

3. MASTER AND SERVANT ⊗⇒217(23)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A coal miner, familiar with the danger of the falling of the roof of a mine, though he did little of the actual excavating himself, was called, with others, by the foreman to remove rocks which had fallen when props supporting the roof had been knocked down. While at work, more of the roof fell. The foreman then tested the roof, as did the miner himself. Upon hearing a cracking noise, another of the employés fled, and shortly thereafter a section of the roof fell, killing the miner. *Held*, that he assumed the risk of the injury, having made an independent investigation himself.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 591; Dec. Dig. ⊗⇒217(23).]

4. MASTER AND SERVANT ⊗⇒222(2)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

In such case, where there was no evidence of any disinclination on the part of the miner to incur the danger, or showing that a refusal would have resulted in discharge, his assumption of the risk cannot be denied,

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on the ground that his failure to continue the work would have caused his discharge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 649; Dec. Dig. ☞222(2).]

In Error to the District Court of the United States for the District of New Mexico; John C. Pollock, Judge.

Action by A. T. Hannett, administrator of the estate of Nick Livaich, against the Victor-American Fuel Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

H. B. Jamison, of Albuquerque, N. M. (A. T. Hannett, of Gallup, N. M., on the brief), for plaintiff in error.

Kenaz Huffman, of Denver, Colo. (Caldwell Yeaman and Frank E. Gove, both of Denver, Colo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and VAN VALKENBURGH, District Judges.

VAN VALKENBURGH, District Judge. This is a suit brought by plaintiff in error, as administrator, to recover for the death of one Nick Livaich, who was employed by defendant in error in one of its mines in the county of McKinley, state of New Mexico. The deceased was a mule driver, whose regular duties consisted in hauling coal from the interior of the mine and in returning empty cars to be refilled. In this capacity he was what is known in this business as a "company man," by which is meant that class of employé who, when not actively engaged in the discharge of his regular duties, is subject to the call of the foreman for any general work about the mines. This included the cleaning up and clearing of slopes and passages wherever they became obstructed by a fall of coal or otherwise. At the time of his death Livaich had been working in this same mine, in the capacity stated, for a considerable period. From the statement of his brother, it appears that he had worked a long time in coal mines, although not always, nor perhaps generally, employed in the actual digging of coal. Nevertheless he is shown to have been familiar with all the varied activities of coal mining, and with this mine in particular. The slope in which the accident occurred was driven for a long distance through sandstone rock; above the rock, forming its roof, were deposits of coal. The formation, generally, was such that supports were deemed unnecessary, but at some points, for greater safety, the roof had been strengthened by crossbars, supported on legs or props at either end. These crossbars were placed 3 or 4 feet apart, and on the day in question some empty cars, passing through the slope, had left the track, had collided with a number of these props or legs, and had caused four of these supporting bars to be displaced. By the shock of this impact, and the removal of these supports, the roof of the slope was disturbed and weakened, and a large quantity of rock fell from it upon the floor of the slope. It then became necessary to clear this passageway, and the foreman summoned a number of company men, including the deceased, to assist in this work. They found the four timbers referred to out of place, and about 15 or 20 feet of the roof unsupported at the points where these timbers, with crossbars, had formerly stood.

They set to work to clear the slope, and had the fallen rock nearly removed, when another fall of about the same proportions occurred. The pit boss caused a timber to be replaced, and after that sounded the roof to test its safety. Livaich himself then took the pick and sounded for himself. Both he and the foreman pronounced the roof safe, and work was resumed. Shortly afterwards an ominous crack was heard in the roof, and one of the most experienced of the miners ran in fear from the place, but later returned. The work was continued, and a few minutes later more rock fell, and Livaich was killed. Upon this evidence the trial court directed a verdict in favor of defendant, and of this action plaintiff in error complains to this court.

In the District Court, as here, the main defenses relied upon were: (1) That the negligence, if any, was that of the pit boss; that at this time and place he was a fellow servant of the deceased, and not the representative of the master, in the discharge of nondelegable duties. (2) That Livaich was aware of his danger, and voluntarily assumed the risks of his employment, and by his own negligence contributed to his injury and death.

[1, 2] Under the undisputed facts presented by the record, it will be necessary to consider only the second of these defenses. This court has repeatedly held that a servant, by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the service which he knows and appreciates, including those which are incident to the employment and are contemplated in the contract of hiring, and those which arise from the failure of a master fully to discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances to use. Owl Creek Coal Co. v. Goleb, 127 C. C. A. 27, 210 Fed. 209–215, and cases cited. While he is not required to make an investigation or inspection to ascertain whether or not the duty of the master has been performed, he must have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience. United States Smelting Co. v. Parry, 92 C. C. A. 159, 166 Fed. 407.

[3, 4] Under the law, as thus declared, the conclusion is irresistible that the judgment of the lower court must be affirmed. The deceased knew, and was chargeable with knowledge of, the danger incurred, and voluntarily assumed the risk of exposing himself to it. His acts were such that fair-minded men could not draw different conclusions therefrom, and if the case had been submitted to the jury, the court would have been compelled to set aside the verdict, if one had been returned in favor of the plaintiff. That this was a place of grave danger should have been apparent to all there present. It was obvious to the deceased himself, and was communicated to him by the acts and conduct of his associates. He, as well as the foreman, knew that the usual timbers were absent. A fall had already occurred. The roof was in a shaky condition. Another fall of rock came down while they were there at work and prior to the fatal accident, thus indicating that the condition of the roof was unstable. The foreman then again tested

the roof, and not satisfied with that, the deceased took the pick and tested it for himself. He did not rely upon the foreman, but made an independent investigation, thus indicating an appreciation and knowledge of the danger. Still later, the roof was heard to crack, and one, at least, of his coworkers fled in apprehension. Independently of past experience, whatever may be deemed to have been obvious to the pit boss was equally obvious to the workmen, and there were present many physical evidences of danger. The deceased had been about mines long enough to know and appreciate that danger, and his conduct, and the testimony generally, shows that he had the intelligence and experience to appreciate it. Voluntarily, and without complaint, he assumed the risk of proceeding with the work.

Counsel seek to take this case out of the rule by suggesting a presumed fear of discharge if Livaich had refused to continue; but this suggestion cannot be indulged, in the absence of testimony which justifies it. We should expect to find either some conduct on the part of the superior which would warrant such a presumption, or some disinclination on the part of the employé to incur the danger, even though his reluctance be not carried to the point of absolute refusal. Neither is disclosed by the record.

For the reasons stated, the action of the trial court in directing a verdict in favor of defendant was right, and the judgment is accordingly affirmed.